[S. F. No. 10470. In Bank.—February 18, 1924.]

BRIGGS & TURIVAS (a Corporation), Respondent, v. PACIFIC TRADING COMPANY (a Corporation), Appellant.

[1] SALES — DELIVERY — INSTRUCTIONS — CANCELLATION. — Where the buyer of goods in its order uses the expression, "We agree to buy this outright and place same in warehouse. . . . Payment to be made against warehouse receipt or domestic or export bill of lading, as such may be the case," this implies that it has not determined how or when it desires delivery to be made, and the seller is entitled to await further instructions; and the buyer has no right to cancel the contract because of delay in delivery, where it gave no such instructions.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. J. J. Van Nostrand, Judge. Affirmed.

The facts are stated in the opinion of the court.

Joseph E. Bien for Appellant.

Brownstone & Goodman for Respondent.

THE COURT.—The following opinion, prepared by Mr. Justice Kerrigan prior to his retirement, is hereby adopted as the opinion of the court.

This is an action for damages for breach of a contract to buy a carload of wire. Plaintiff recovered a judgment of $2,848.10, being the difference between the contract price and the market value of the goods, and defendant appeals.

The facts of the case as they appear from the various letters and telegrams exchanged between the parties to this contract and from the deposition of one Frank A. McMonagle, the manager of the plaintiff corporation, are as follows:

During the year 1918 the plaintiff was an Illinois Corporation, having its place of business in Chicago. At the same time the defendant was a California corporation, having its principal place of business in San Francisco.

W. S. Hanford acted as agent for the plaintiff in dealing with the defendant in San Francisco. At a place in Chicago, known as Blue Island, the plaintiff had a quantity of wire of various sizes and some of which was rusted to a certain extent. After some negotiations the defendant wrote to the plaintiff a letter which, and the acceptance of its terms by plaintiff, constituted the contract on which this suit is based. The letter is as follows (on the letterhead of the Pacific Trading Company, Inc.) :

> "San Francisco, Cal., U. S. A.
>     "W. S. H. 427.
>     "September 17, 1918.
>     " (Received Sep. 21, 1918,
>         "W. S. Hanford.)

"Briggs & Turivas Co.,
    "Chicago, Ill.
        "*Attention Mr. W. S. Hanford.*
"Gentlemen:

"You may take our firm order for one (1) Car—approximately 80,000 lbs. Black Soft Steel Wire, Gauges 2–6.
"Price 3c. Flat f. o. b. Cars Chicago.

"We agree to buy this outright and place same in warehouse providing said material is as stated—Slightly Rusty, and not rusted into the goods.

"Payment to be made against Invoice and Warehouse receipts, or Domestic or Export Bills of Lading, as such may be the case.

> "Yours very truly,
>     "Pacific Trading Co., Inc.
>         "G. K. Fujioka,

"RK:MD.                "Asst. Mgr. Export Dept."

At the time the letter was written the World War was in progress and an altogether abnormal condition existed in the iron and steel market. The letter was received by the plaintiff on September 21, 1918, and thereupon Frank A. McMonagle, the manager of the plaintiff corporation, testified that he telephoned to the plaintiff's yard to prepare the wire for shipment. Shortly afterward, as he testified, he prepared tags for the purpose of marking the coils, and which were placed thereon. The record does not show any communication thereafter between the parties until December 13, 1918. On that date the defendant wired the plaintiff

that its purchaser had canceled its order and therefore that the defendant considered its order to the plaintiff canceled. This telegram read: "Our order black rusty wire one car account delayed receipt of draft and warehouse receipt our purchasers have canceled therefore we consider our order canceled." To this the plaintiff replied as follows: "Your wire thirteenth sale contract nine six two wire now in warehouse being unloaded. Absolutely insist on your acceptance of same in view of fact no cancellation received prior to shipment." A warehouse receipt, introduced in evidence by the plaintiff, showed that the wire had been deposited in a Chicago warehouse on December 12th, the day before defendant telegraphed its cancellation. Some correspondence followed between the parties, and on January 22, 1919, the plaintiff drew a sight draft on the defendant, attached thereto the warehouse receipt and forwarded the same through its bank to the Seaboard National Bank of San Francisco. The defendant refused to pay the draft and this action was commenced.

[1] The defendant urges in support of its appeal that the plaintiff was in default under the terms of the contract, with the consequent right on its part to cancel, thus terminating its liability. This contention is based upon the argument that no time being specified in the contract for the delivery of the goods, the seller was by law given a reasonable time therefor, which the testimony showed to be ten days, and that it did not make delivery within said time nor at any time before defendant's cancellation, nearly three months after the giving and acceptance of the order.

This contention, we think, is based upon a misconception of the meaning of the contract, under which, it is clear, the seller was not required to make tender or delivery of the wire until the buyer forwarded instructions as to its destination. The buyer in its order used the expression "We agree to buy this outright and place same in warehouse. . . . Payment to be made against warehouse receipt or domestic or export bills of lading, as such may be the case," plainly implying that the buyer had not yet determined how or when it desired delivery to be made; that it might order the goods to be placed in a warehouse, or that it might order them to be shipped to a domestic or foreign destination. In this situation the seller was entitled to

await further instructions, which the buyer neglected to furnish; and when the latter finally attempted to cancel the order, it gave as its reason: Account delayed receipt of draft and warehouse receipt our purchasers have  canceled, therefore we consider our order canceled." It would appear from this language that the defendant had resold upon certain conditions as to dispatch of draft and warehouse receipt the wire purchased from the plaintiff, which conditions not having been complied with by the defendant, its customer upon that ground canceled its order. The defendant then plainly says: "Therefore we consider our order canceled." But its right to cancel its order did not depend upon its customer's action with reference to a contract with which the plaintiff had no concern. Unless the plaintiff was in default the defendant is bound by its contract. Upon the trial of the case the defendant offered no evidence whatever, but the plaintiff's evidence showed that after the making of the contract the defendant gave no instructions to the plaintiff as to delivery or shipment. And if it be said that the delay referred to in defendant's telegram of cancellation was the plaintiff's delay in warehousing or shipping, the absence of these instructions furnishes the complete answer. Apparently at the time defendant placed its order with the plaintiff it did not know where its customer, assuming that it had one, would want the material delivered. Receiving no instructions upon this point, plaintiff was not required to make a delivery. Indeed, it would not know where to deliver the wire had it so desired. Under the circumstances of the case the plaintiff adopted a proper course of action, that is, to keep the goods until defendant should send instructions. Not having heard from the defendant, the plaintiff deposited the wire in a warehouse. At the time it did so the contract was still in existence, but the defendant not having given instructions as to the delivery of the wire within a reasonable time could have been put in default by plaintiff. (*Gardiner* v. *McDonogh,* 147 Cal. 313 [81 Pac. 964]; Williston on Sales, secs. 450, 451 et seq.; 2 Mechem on Sales, p. 972.) But while plaintiff could have put defendant in default for its delay in proceeding with the execution of the contract, no such right existed in the defendant. It was the defendant's and not the plaintiff's duty to take the first affirmative action under

the contract, which was to notify plaintiff where to make delivery. The defendant's attempted cancellation was, therefore, ineffective for any purpose, and the plaintiff was justified in refusing to abide by this attempted cancellation and in insisting that defendant live up to its agreement.

Some stress is laid by the appellant upon certain language to be found in one of plaintiff's letters in which it attributes whatever delay there was in warehousing the goods to certain labor trouble. This refers to the fact that the plaintiff kept the goods on hand a considerable time before sending them to a warehouse. As we have seen, there was no obligation upon plaintiff's part, in the absence of specific instructions from the defendant, to deposit them in a warehouse, and it had no need to offer any excuse for delay in doing so. The fact that it offered an excuse affords no ground for implying an obligation at variance with the plain terms of the contract.

The respondent in its brief has devoted some space to an attempt to show that title to the goods passed to the defendant. As to this it is sufficient to say, first, that the question is not involved in the case, and, second, that this action was brought upon the proper and correct theory that title had not passed.

The evidence in the case supports the implied finding of the trial court that the plaintiff had done and performed on its part all things to be done and performed by it within a reasonable time.

The judgment is affirmed.

Rehearing denied.

All the Justices concurred.