[Civ. No. 4590.   First Appellate District, Division One.—January 23, 1925.]

## WARD-LEWIS LUMBER COMPANY (a Corporation), Appellant, v. ANDREW F. MAHONY, Respondent.

[1] SALES—CONSIGNMENT OF GOODS TO SHIPPER — TRANSFER OF NON-NEGOTIABLE BILL OF LADING. — Under section 2129b of the Civil Code, when goods are consigned to the shipper at the destination point, under a straight non-negotiable bill of lading, approved standard form of the interstate commerce commission, the only way another person can obtain possession of the goods is by proper transfer of the bill of lading by the shipper.

[2] ID.—EVIDENCE OF TRANSFER—TELEGRAM TO BUYER.—Where goods are consigned to the shipper at the destination point, under such a straight non-negotiable bill of lading, statements in a telegram from the shipper to the buyer that "both shipments with bills of lading indorsed over to your customer which constitutes delivery," cannot be accepted as proof of the fact of indorsement; but even if they were, mere indorsement of a non-negotiable bill of lading is ineffectual, and confers upon the transferee no additional right.

[3] ID.—TIME OF DELIVERY — DELAY—FAILURE TO TRANSFER BILL OF LADING.—In an action by the shipper against the buyer for damages for alleged breach of a contract to purchase two carloads of laths, where the contract provided for delivery during a specified month and the evidence shows that during said month the laths were consigned to the shipper, at the destination point, under a straight non-negotiable bill of lading, but they did not reach the destination point until a certain date in the succeeding month, and the evidence does not disclose any transfer of the bill of lading to the buyer, the shipper fails to establish a valid tender or delivery of the laths to the buyer, either within the period fixed by the contract or at all.

[4] ID.—NONDELIVERY — PLEADING — WAIVER.—In such action, the defense of nondelivery is sufficiently pleaded where the answer denies that plaintiff delivered two or any carloads of laths to defendant, in the state where plaintiff's place of business was located, or elsewhere, during the month in which they were to be delivered, or at all; and defendant did not waive his right to object to the nontransference of the bills of lading, by placing his

3.   Delivery of goods to purchaser as affected by seller's retention of bill of lading, note, **Ann. Cas.** 1916A, 1047.

refusal to accept said laths upon other grounds, where plaintiff could not have complied with his contract, even though defendant had objected to the nontransference of the bills of lading, as the time within which to make delivery had already expired.

[5] ID.—PLACE OF DELIVERY—IMMATERIAL ISSUE.—In such action, it was immaterial whether the contract called for delivery at the shipping point during the month specified or delivery at the destination point during said month, where the evidence showed that, while the laths were delivered to the carrier at the shipping point during said month, they were consigned to the shipper, at the destination point, under a straight non-negotiable bill of lading, which was not transferred to the buyer, and they did not reach the destination point until during the succeeding month.

[6] ID.—TRANSFER OF NON-NEGOTIABLE BILL OF LADING—NOTICE TO CARRIER.—By virtue of section 2129e of the Civil Code, the transferee of a non-negotiable bill of lading, after notice of transfer to the carrier, becomes the direct obligee of whatever obligations the carrier owed to the transferor immediately before such notification; but, prior to the notification, the title to the goods, and the right to acquire the obligation of the carrier, may be defeated by garnishment, attachment, or execution upon the goods by a creditor of the transferor, or by notice of a subsequent sale.

---

(1) 10 C. J., p. 201, n. 17.   (2) 10 C. J., p. 204, n. 46.   (3) 35 Cyc., p. 196, n. 73.   (4) 35 Cyc., p. 196, n. 75, p. 588, n. 99.   (5) 35 Cyc., p. 176, n. 88.   (6) 35 Cyc., p. 195, n. 69.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Daniel C. Deasy, Judge. Affirmed.

The facts are stated in the opinion of the court.

Samuel T. Bush and Treat, Bush and Ogden for Appellant.

Thacher & Wright, Harrison A. Jones and Thomas A. Thacher for Respondent.

---

5. Delivery of goods to carrier for shipment as delivery to purchaser, notes, 20 Ann. Cas. 1027; Ann. Cas. 1916A, 1046. See, also, 23 R. C. L. 1421, 1427.

KNIGHT, J.—Plaintiff brought this action to recover damages for the alleged breach of a contract, wherein the defendant refused to accept and pay for two carloads of laths which, it is claimed, he agreed to purchase from plaintiff. The trial was had before the court sitting with a jury. At the conclusion of the evidence the jury, under the direction of the court, returned a verdict in favor of defendant, and judgment was entered accordingly. Plaintiff has appealed.

The respondent seeks to sustain said verdict and judgment upon two principal grounds, namely: the alleged failure of appellant to prove a delivery of the laths within the period of time fixed by the agreement, or at all, and that no valid contract was established.

At the time this transaction took place the appellant corporation, Ward-Lewis Lumber Company, was engaged in the wholesale lumber business at Portland, Oregon; the respondent, Andrew F. Mahony, was sole proprietor of the Andrew F. Mahony Lumber Company, and was doing business under that fictitious name; J. C. McCabe and F. J. Heaphey were originally made parties defendant herein upon the assumption that they also were members of the firm of Andrew F. Mahony Lumber Company, but as against them the action was subsequently dismissed. Gritzmacher and Johnson, of San Francisco, were lumber jobbers, operating through a representative in Portland, Oregon, named F. W. McCoy.

On February 1, 1920, McCoy delivered to appellant in Portland, an order from Gritzmacher and Johnson for three carloads of laths, calling for "March delivery . . . Price f. o. b. cars del'd. on 25c rate . . . Price: $16.25 delivered by rail on 25c rate." The shipping directions were: "Ship to Andrew F. Mahony Lumber Co. Sacramento, Calif. Notify same Fife Bldg., San Francisco. Send invoice to Same. Address Fife Bldg., San Francisco, Calif. Make shipment March delivery." A carbon copy of said order was sent to respondent by Gritzmacher and Johnson. On February 3, 1920, appellant sent an acknowledgment of said order by mail to respondent as follows:

"Acknowledgment of order — Ward-Lewis Lumber Co. Wholesale Lumber, Northwestern Bank Building, Portland, Oregon.

February 3, 1920.

Our Order 269

Salesman G. & J.

  by F. W. McCoy

  Invoice to Andrew F. Mahony Lumber Co.,

  San Francisco, Calif.

Freight Rate 25c

  Consign to Same  Sacramento, Calif.

Terms Regular

Route S. P.  F. O. B. cars 25c rate

We are entering your order as follows: Please check same carefully and if not correct notify us immediately.

 3 cars 1½″  #1 Fir Lath

 Price: $16.25

 For March delivery."

(Stamped) "It is expressly agreed that any advance in freight rates for Government tax on freight be paid by consignee. Ward-Lewis Lumber Co. by A. G. L."

On February 25th Gritzmacher and Johnson, with the consent of respondent, modified said order as to the shipment of one carload of said laths, their letter to appellant in this respect stating: "Will you please ship first car on this order and as early as possible to the San Leandro Mill and Lumber Company, San Leandro, California, invoicing same to us instead of to Andrew F. Mahony Lumber Company as we have arranged with them to handle the car." They also urged appellant to advance the shipping date of all three cars if possible, saying: "We would be very glad to get them off our hands while the market here is in good shape, as we are somewhat fearful of a drop." On February 28th, Gritzmacher and Johnson again wrote to appellant giving directions as to the shipment of the remaining two cars, as follows: "Please ship the other two cars to J. P. Muller, Sacramento, California, for diversion, invoicing same to Andrew F. Mahony Lumber Company as originally instructed." Appellant, in a letter dated March 3d, acknowledged receipt of the two letters last mentioned, stating they would make

the corrections in the order as requested. On March 11th respondent telegraphed appellant as follows: "Our customer cancels lath order with us so do not ship more than sixty thousand pieces to each car," to which appellant replied, by letter, dated March 12th, saying: "Will endeavor to ship you as small cars as possible on each of the cars of lath, which we have going out to you some time this month." On March 31st respondent telegraphed appellant as follows: "Gritzmacher advises two cars lath shipped third car being shipped today our order accepted for March delivery not March shipment will not accept lath now." Answering, appellant sent respondent the following telegram: "Replying your wire thirty first car C & E I shipped March twenty seventh Car C & S one three three two five shipped thirtieth both to apply our order two six nine. Both shipments with bills of lading endorsed over to your customer which constitutes delivery. Will not accept cancellation." On April 2, 1920, respondent received by mail the bills of lading for the two carloads of laths and immediately thereupon telegraphed appellant, saying: "Replying your wire April first Refuse to accept lath shipped in car C & E I shipped March twenty seventh car C and S one three three two five shipped thirtieth ordered for March delivery and not March shipment. Returning bill lading to you by mail." Appellant telegraphed in reply that it had referred the matter to Pacific Coast Shippers Association and that if it was within its rights it would expect respondent to take the laths, otherwise it would make other disposition of them. Both carloads of laths arrived in Sacramento on April 6, 1920, and were later disposed of to other parties under the direction of appellant for prices much lower than those fixed in the Mahony contract. The evidence further shows, however, that the laths were not shipped to respondent, nor to his order, but were consigned to appellant Ward-Lewis Lumber Company, Sacramento, California, under straight non-negotiable bills of lading, approved standard form of the interstate commerce commission, and there is no evidence whatever in the record to show that either bill of lading was ever transferred, or indorsed in any manner, by appellant to respondent. It would therefore appear that said laths were never released from appellant's possession or control; and therein, we think, lies the fatal weakness of appellant's case.

Section 2127a of the Civil Code provides that a carrier is justified in delivering goods to one who is lawfully entitled to the possession of the same; or to the consignee named in a non-negotiable bill for the goods; or to a person in possession of a negotiable bill, under the terms of which the goods are deliverable to his order, or which has been indorsed to him, or in blank by the consignee, etc.; the succeeding section (2127b) fixes the liability of the carrier for a misdelivery. [1] Section 2129b of the same code provides that a bill may be transferred by the holder by delivery, accompanied with an agreement, express or implied, to transfer the title to the bill, or to the goods represented thereby; but that a non-negotiable bill cannot be negotiated, and the indorsement of such a bill gives the transferee no additional right. The only method, therefore, by which respondent might have obtained possession of the laths was by proper transfer of the bills of lading by appellant, as required by said section 2129b of the Civil Code; and as already stated, no transfer or indorsement of any kind was ever made. [2] It is true the telegram from appellant to respondent, dated April 1, 1920, stated: " . . . both shipments with bills of lading indorsed over to your customer which constitutes delivery . . . "; but the statements contained in that telegram cannot be accepted as proof of the fact of indorsement, and if they were, mere indorsement of a non-negotiable bill of lading would be ineffectual, and would confer upon the transferee no additional right. (Sec. 2129b, Civ. Code, *supra.*) It is also true that the record discloses that the original bills of lading could not be produced at the trial because the same were surrendered to the railroad company by appellant at the time the laths were finally taken from the cars and sold to other parties, and that in order to prove the contents thereof appellant accepted copies made and produced by respondent. Nevertheless, those copies wholly failed to show a transfer or any indorsement, and proof *aliunde* was not offered upon the subject. [3] Under those circumstances respondent was not entitled to, nor could he have obtained, the possession of said laths from the railroad company, upon the arrival of the cars in Sacramento on April 6, 1920. For the reasons stated we are of the opinion that appellant failed to establish a valid tender or delivery of said laths to respondent, either within the period of time fixed by the

contract or at all, and that the directed verdict and the judgment must be sustained upon that ground.

[4] Regarding this same point, further contention is made by appellant that respondent waived his right to object to the nontransference of said bills of lading because his refusal to accept said laths was placed upon other grounds, and that consequently appellant was given no opportunity to consummate the transfer (Civ. Code, sec. 1501; Code Civ. Proc., sec. 2076); also, that no such defense was pleaded. We believe the rule contended for by appellant is not applicable here, for the reason that the question presented is not one of the "mode of performance" of the contract, such as is mentioned in code sections cited, but one of a total failure to make delivery of goods sold; moreover, it would have been unavailing to appellant even if it had been granted further time to consummate the transfer of said bills, because when said bills were received by respondent on April 2, 1920, the time fixed by the contract within which to make delivery had already expired. The defense of nondelivery was sufficiently pleaded, the answer, in this respect, having denied that appellant delivered two or any carloads of laths to defendant, in Oregon or elsewhere, during March, 1920, or at all. The case of *Briggs & Turivas* v. *Pacific Trading Co.*, 193 Cal. 325 [223 Pac. 949], cited by appellant, is clearly distinguishable from the one before us. There the vendor was holding the goods, at the request of the vendee, subject to the receipt of further shipping instructions, which, the court held, excused delivery within the period of time fixed by the contract. In the case at bar, although respondent's telegram of March 11, 1920, stated that his customer had canceled his order, it did not indicate that appellant should await further shipping instructions, the only request therein made being that small carloads be shipped. Appellant doubtless so understood the telegram because it immediately telegraphed in reply: "Will endeavor to ship you as small cars as possible on each of the three cars of lath which we have going out to you some time this month."

[5] The parties are also disagreed as to whether the contract called for March delivery in Portland, or March delivery in Sacramento. The determination of that question would seem to be immaterial, however, for the reason that

under either construction a delivery is not shown. If March delivery in Portland was required by the contract, the laths at that point were in the exclusive possession and under the absolute control of appellant, the same having been deposited with the railroad company, under non-negotiable bills of lading consigned to appellant; and if March delivery in Sacramento was contemplated, the evidence shows that the laths arrived there on April 6, 1920, not only too late for March delivery, but at that point they were still in the possession and under the control of appellant under said non-negotiable bills of lading.

[6] By virtue of section 2129e of said code (Civ. Code), the transferee of a non-negotiable bill, after notice of transfer to the carrier, becomes the direct obligee of whatever obligations the carrier owed to the transferor immediately before such notification; but prior to the notification the title to the goods and the right to acquire the obligation of the carrier may be defeated by garnishment, attachment, or execution upon the goods by a creditor of the transferor, or by notice of a subsequent sale. Applying the provisions of said code section to the circumstances under which the laths in question were consigned, and bearing in mind the principle of law that delivery to the buyer must be such a transfer of the possession as will remove the goods from the dominion of the seller and entitle the purchaser to demand the same from the carrier (35 Cyc. 195), it becomes manifest that at no time was there a valid tender or delivery of said laths.

Inasmuch as the verdict and the judgment must be sustained upon the ground of nondelivery, it becomes unnecessary to discuss the question of the validity of the contract.

The judgment is affirmed.

Tyler, P. J., and St. Sure, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on March 24, 1925.