Northern Grain Company, Appellant, v. Joseph J. Wiffler et al., Respondents.

Sales — right of stoppage in transitu — withdrawal of bill of lading and rejection of goods by vendee after goods are delivered at destination by railroad and bill of lading marked "cancelled by delivery"— when vendor thereafter and after insolvency of vendee may exercise his right of stoppage in transitu.

Plaintiff sold to the assignor of the individual defendant on credit a carload of oats which were shipped to the latter over the line of the defendant railroad company. A bill of lading covering the shipment was forwarded with a draft for the purchase price of the oats and upon acceptance by the vendee of the draft the bill of lading was delivered to him. At the office of the defendant railroad company it was received and marked "cancelled by delivery." "Thereupon" the vendee examined and was dissatisfied with the condition of the oats and "thereupon" withdrew the bill of lading from the railroad company, caused the words "cancelled by delivery" to be stricken from the face of the bill and "thereupon" returned it to the plaintiff with the statement that he refused to accept the oats or take delivery thereof by reason of their condition and that he rejected the same. These, after remaining in a car in the possession of the railroad company for six months, were sold to satisfy its lien for transportation charges and the surplus of the proceeds over such charges were held by the railroad company and are the subject of the present controversy. The draft which had been accepted by the vendee was not paid at maturity and an action was commenced against him thereon by the vendor and a judgment recovered which has never been satisfied, the defendant having become insolvent. *Held*, that the recovery of a judgment on the draft by plaintiff does not defeat the right he is now seeking to exercise; that the goods had not been delivered by the carrier to the vendee within the meaning of the statute (Personal Property Law, §§ 134, 138, 139; Cons. Laws, ch. 41, amd. L. 1911, ch. 571), and that the plaintiff could and did successfully exercise the right of stoppage in transitu asserted by it.

*Northern Grain Co.* v. *Wiffler,* 168 App. Div. 95, reversed.

(Submitted February 1, 1918; decided March 19, 1918.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the first judicial department,

entered September 22, 1915, in favor of defendants, upon the submission of a controversy under section 1279 of the Code of Civil Procedure.

·The nature of the controversy and the facts, so far as material, are stated in the opinion.

*Richard F. Weeks* and *Mortimer Boyle* for appellant. The proceeds of the oats were in transit at the time they were stopped because Wiffler had rejected them. (L. 1909, ch. 45, § 139.) The proceeds of the oats were in transit at the time they were stopped because the railroad company had not acknowledged to Wiffler that it held the oats on his behalf and continued in possession as his bailee. (Williston on Sales, § 528; *Ex parte Cooper*, 11 Ch. Div. 68; *Kendall* v. *Marshall*, 11 Q. B. D. 356; *Whitehead* v. *Anderson*, 9 M. & W. 518; *Harris* v. *Pratt*, 17 N. Y. 249; *Holbrook* v. *Vose*, 6 Bosw. 76; *Covell* v. *Hitchcock*, 23 Wend. 611; *Matter of N. Y. House Furnishing Co.*, 169 Fed. Rep. 612; *Brewer Lumber Co.* v. *Boston & Albany R. R. Co.*, 179 Mass. 228; *Godts* v. *Rose*, 32 L. & E. Rep. 268; *Stevens* v. *Wheeler*, 27 Barb. 662.) The action brought by ·the plaintiff against Wiffler upon the draft, and the recovery thereon had no effect upon the right of stoppage in transitu. (*Harris* v. *Pratt*, 17 N. Y. 249; *Holbrook* v. *Vose*, 6 Bosw. 76; *Arnold* v. *Delano*, 58 Mass. 33; *Newhall* v. *Varaas*, 13 Me. 93; *Houlditch* v. *Desange*, 2 Starkie, 337; *Scrivener* v. *Gt. No. Ry. Co.*, 19 Wkly. Rep. 388; *Wade* v. *Moffett*, 21 Ill. 110.)

·*Thomas F. Curran* for respondents. Title to the oats and the proceeds of their sale vested in the defendant Wiffler, and his rights therein passed to the defendant Dana, by virtue of the assignment. (*Westfall* v. *Peacock*, 63 Barb. 209.) Plaintiff waived his right to stoppage in transit and the same was never revived. (Benjamin on Sales, § 846; *Stevens* v. *Wheeler*, 27 Barb. 658.) Whatever may have been the rights of the plaintiff to

the right of stoppage in transit as to the oats, this right does not extend to the proceeds arising from the sale thereof.   (L. 1909, ch. 45, § 156.)

HISCOCK, Ch. J.   This appeal involves a consideration of the right of stoppage in transitu of goods sold on credit and shipped by a common carrier.   The question of the existence of the right is to be determined upon an agreed statement of facts.

Plaintiff sold to one Wiffler on credit a carload of oats which were shipped to the latter over the line of the defendant railroad company.   A bill of lading covering the shipment was forwarded with a draft for the purchase price of the oats and upon acceptance by the vendee of the draft the bill of lading was delivered to him.   He presented the same at the office of the defendant railroad company where it was received and marked "cancelled by delivery."   "Thereupon" the vendee examined and was dissatisfied with the condition of the oats and "thereupon" withdrew the bill of lading from the railroad company, caused the words "cancelled by delivery" to be stricken from the face of the bill and "thereupon" returned it to the plaintiff with the statement that he refused to accept the oats or take delivery thereof by reason of their condition and that he rejected the same.

Nothing more was done by which there is claimed to have been accomplished a delivery to or acceptance by the vendee of the oats.   These, after remaining in a car in the possession of the railroad company for six months, were sold at public auction to satisfy its lien for transportation charges and the surplus of the proceeds over such charges was held by the railroad company and is the subject of the present controversy.

The draft which had been accepted by the vendee was not paid at maturity and an action was commenced against him thereon by the vendor and a judgment recovered which has never been satisfied.   In such action

the vendee alleged that " the draft was given by defendant in payment of a certain carload of oats which plaintiff sold to the defendant and that the same were good, marketable and useable (thus written in the agreed statement), and that when defendant received said carload the same were old and musty, and could not be sold and used, and were of no value whatsoever, and for that reason the note was given without consideration." Intermediate the commencement of this action and entry of judgment the vendee made an assignment for the benefit of creditors to the defendant Dana and thereafter plaintiff surrendered to the defendant railroad company for cancellation the bill of lading before mentioned and served upon it notice asserting the exercise of its right of stoppage in transitu of said oats, claiming that the latter had never been delivered to the vendee.

In the arguments addressed to us there is of course no dispute about the general principles applicable to the exercise of the right of stoppage in transitu and no serious question is presented but that under these principles plaintiff had the right to stop delivery of the oats to its non-paying insolvent vendee provided they still remained in the possession of the carrier under its original contract of transportation and had not been delivered either actually or constructively. It is true that some little attempt is made by respondents' counsel to argue the proposition that the surplus proceeds of the oats do not stand in the place of the latter, but we do not regard this as worth discussion. Some attention also has been paid to the fact that plaintiff recovered a judgment against its vendee for the purchase price of the oats, but this circumstance does not seem to be of importance. It may be conceded that by recovery of such judgment the title to the oats passed to the vendee and that under ordinary conditions the latter would have been entitled to take possession of them. This, however, does not

defeat the right which plaintiff is now seeking to exercise. There has been at times debate whether the exercise of a right of stoppage in transitu was the assertion of a right in the nature of a lien against property whereof another held title or amounted to a rescission of a contract. The preponderance of authority, we think, sustains the former theory. (*Babcock* v. *Bonnell*, 80 N. Y. 244; *Coleman* v. *N. Y., N. H. & H. R. R. Co.*, 215 Mass. 45, 49.) But however this may have been, it is now provided by section 134 of article 5 of the Personal Property Law (Cons. Laws, ch. 41, amd. L. 1911, ch. 571), relating to sales of goods, that " Subject to the provisions of this article, notwithstanding that the property in the goods may have passed to the buyer, the unpaid seller of goods, as such has   *   *   *   (b) In case of the insolvency of the buyer, a right of stopping the goods in transitu after he has parted with the possession of them."

Thus we come to the question, stripped of accidental conditions, whether plaintiff could and did successfully exercise the right asserted by it. The tests by which to decide this question are especially found in two sections of the statute already referred to. Section 138 provides: " Subject to the provisions of this article, when the buyer of goods is or becomes insolvent, the unpaid seller who has parted with the possession of the goods has the right of stopping them in transitu, that is to say, he may resume possession of the goods at any time while they are in transit,   *   *   *." Section 139 then tells when goods are to be considered in transit within the meaning of the prior section. It says that they are thus in transit —

" (a) From the time when they are delivered to a carrier by land or water,   *   *   * until the buyer,   *   *   * takes delivery of them from such carrier   *   *   *;

" (b) If the goods are rejected by the buyer, and the carrier   *   *   * continues in possession of them, even if the seller has refused to receive them back."

And throwing some light on the interpretation of the clauses stating when goods are in transit it likewise states when they are to be regarded as not in transit. . The same section already quoted from enacts that they are not in transit " If, after the arrival of the goods at the appointed destination, the carrier * * * acknowledges to the buyer * * * that he holds the goods on his behalf and continues in possession of them as bailee for the buyer * * *."

The only debatable question under the tests thus prescribed is the one whether the goods had been delivered by the carrier to the vendee. It seems to us that they had not been. The facts determinative of that question have already been stated and need not be repeated. Referring back to them, it may be conceded that if the vendee after taking his bill of lading to the carrier and permitting it to be marked " cancelled by delivery " had stopped, there would have been a constructive delivery. Also, if he had allowed the matter to rest in that situation for a substantial time before doing anything to recall this act it might be necessary to submit to the jury the question whether a delivery had not been so consummated that it could not thereafter be avoided. But he pursued neither of these courses. After the stamping of the bill of lading he " thereupon," that is, immediately, examined the oats and made what, if then permissible, was a clear and decisive refusal of acceptance of them from the buyer and of delivery from the carrier. It is only by separating these steps and regarding them as divisible and distinct transactions that a delivery can be made out. We do not think they ought to be thus separated, but that they were so closely connected in point of time and otherwise that they should be given the effect of one connected transaction. This being done it is clear that there was no delivery.

We think that the subsequent history of the shipment

confirms this view. It remained in the physical possession of the carrier for months. There is no suggestion of any agreement under which it was thus held by the latter as agent for bailee for the vendee. On the other hand that which was done by the carrier, and so far as appears without objection or question by the parties, shows that the former was holding the oats under its original contract of shipment. As has been stated, it sold the oats for the purpose of satisfying its lien for freight charges and this it could not have done if by delivery it had surrendered its possession as carrier. (*Bigelow* v. *Heaton,* 4 Den. 496; *Penn. Steel Co.* v. *Ga. R. R. & Banking Co.,* 94 Ga. 636.) While in our opinion the facts which we have discussed lead necessarily and under simple principles to the conclusion which we have adopted, general support for that conclusion may be found if necessary in the discussion of the subject of stoppage in transitu contained in *Brewer Lumber Co.* v. *B. & A. R. R. Co.* (179 Mass. 228); *Coleman* v. *N. Y., N. H. & H. R. R. Co.* (215 Mass. 45); *Bolton* v. *L. & Y. Ry. Co.* (L. R. 1 C. P. 431); *Matter of McLaren* (L. R. 11 Ch. D. 68).

In accordance with these views the judgment should be reversed and judgment directed in favor of plaintiff against the defendant, New York Central and Hudson River Railroad Company, for the sum of $287.85, with any interest received thereon by said railroad company, together with further judgment against the defendant Dana as trustee for its disbursements incurred in this court and in the Appellate Division.

CHASE, HOGAN and CRANE, JJ., concur; COLLIN and CUDDEBACK, JJ., concur in result; McLAUGHLIN, J., not sitting.

Judgment accordingly.