HARRIS KASDEN ET AL. *vs.* THE NEW YORK, NEW HAVEN AND HARTFORD RAILROAD COMPANY ET ALS.

Third Judicial District, Bridgeport, April Term, 1926.

WHEELER, C. J., CURTIS, MALTBIE, HAINES and HINMAN, Js.

Questions relating to the construction and effect of a bill of lading issued upon an interstate shipment, are governed by the provisions of the Federal Uniform Bills of Lading Act.

It is provided in § 29 of the Act that a straight, nonnegotiable bill of lading "cannot be negotiated free from existing equities" and that "the indorsement of such a bill gives the transferee no additional right."

A seller's right of stoppage *in transitu* can only be affected by the negotiation for value of a *negotiable* document of title, or by a subsale of the goods made with his assent.

Where the seller of goods is named as both consignor and consignee in a straight, nonnegotiable bill of lading, and he indorses it to the order of, and delivers it to, the buyer, the bill is not thereby rendered negotiable, nor does its further indorsement by the buyer to a third person, who purchases it for value and in good faith, defeat the seller's right of stoppage *in transitu* upon the buyer's insolvency.

Argued April 21st—decided May 29th, 1926.

ACTION to recover damages for the alleged wrongful refusal of the defendant railroad company to deliver

a carload of composition turnings to the plaintiff, in which the defendants Louis H. and Samuel Resnick were joined as codefendants and filed a counterclaim, brought to the Superior Court in New Haven County and tried to the court, *Wolfe, J.;* judgment rendered for the defendants Resnick upon the complaint, and upon their counterclaim to recover $3,988, from which the plaintiffs appealed. *No error.*

The complaint claimed ownership and possession of 40,000 pounds of brass borings contained in a freight-car in the possession of the defendant railroad and located in the freight-yard at Bridgeport. Louis H. Resnick and Samuel Resnick, doing business as the American Steel & Iron Company, of Boston, Massachusetts, were cited in as codefendants, and filed an answer and counterclaim alleging, in substance, that the shipment involved was their property and consigned to them at Bridgeport, and that, on or about September 15th, 1924, they exercised their right of stoppage *in transitu* over the shipment, in possession of the defendant railroad company, and claiming a judgment declaring title to be vested in them or, in lieu thereof, the value of the shipment as damages. The case was tried on the issues raised by this counterclaim and the plaintiffs' reply thereto. The plaintiffs, having taken possession of the property by replevin, subsequently disposed of it, and the damages awarded were the agreed value of the shipment.

The facts, material to the present inquiry, found by the trial court, may be summarized as follows: On September 9th, 1924, the defendant the American Steel & Iron Company, shipped the carload of borings from Billerica, Massachusetts, to themselves at Bridgeport, and the carrier, the Boston and Maine Railroad Company, issued to this defendant a straight bill of lading, naming it as both consignor and consignee, and

plainly marked "nonnegotiable." On September 13th the defendant arranged, by telephone, to sell the metal to the Bridgeport Iron & Metal Company provided that company would pay for another carload of metal previously purchased and not paid for, placed the following indorsement on the bill of lading: "Deliver to Bridgeport Iron & Metal Company or order, the American Steel & Iron Company, by Louis H. Resnick," and forwarded it to the Bridgeport company. On September 14th, Sunday, the defendant learned that the Bridgeport company was insolvent, and on Monday morning notified agents of the New York, New Haven & Hartford Railroad Company, in whose possession, as connecting carrier, the car then was, that the car was not to be delivered to anyone but the defendant. At the time the stop order was given no demand had been made by or for the Bridgeport company for delivery of the car. On September 15th, but subsequent to the receipt by the railroad company of the stop order, the plaintiffs, who were engaged in the metal business in New Haven, purchased the carload of borings from the Bridgeport company, paid $2,775 toward the purchase price, and received the bill of lading, with the added indorsement, "Bridgeport Iron & Metal Company, Edward Goldberg, Treasurer." Thereafter, on the same day, the plaintiffs presented the bill of lading to the railroad company and demanded the shipment, but the railroad company, because of receipt of the stop order, refused delivery. It did not appear that the plaintiffs, at the time of their purchase of the shipment from the Bridgeport Iron & Metal Company, knew that the latter was insolvent or that delivery of the goods had been stopped by the defendant.

*Jacob Caplan,* for the appellants (plaintiffs).

*Harry Allison Goldstein,* with whom, on the brief, were *Joseph G. Shapiro* and *Charles S. Brody,* for the appellants (defendants Louis H. and Samuel Resnick).

HINMAN, J. The reasons of appeal present the propositions that the indorsement of the bill of lading by the defendant American Company in the form above stated, rendered the same negotiable; that the defendant, by such indorsement, is estopped from denying that the bill was negotiable; and that the defendant had no right of stoppage *in transitu* as against the plaintiffs as purchasers in good faith. The status and effect of the bill of lading, to be determined upon the facts found, is decisive of the appeal.

The Act of Congress of August 29th, 1916, relating to bills of lading (39 U.S. Stat. at Large, 538 *et seq.* Fed. Stat. Anno., 1918 Supp. [2d Ed.] p. 72 *et seq.;* 8 U.S. Comp. Stat., § 8604 aaa-w) provides, in § 1, that "bills of lading issued by any common carrier for the transportation of goods . . . from a place in one State to a place in another State, . . . shall be governed by this Act." Since the shipment here under consideration was interstate, questions as to the construction and effect of the bill of lading are controlled by this Act, so far as it applies. In § 2 a "straight bill" is defined as one "in which it is stated that the goods are consigned or destined to a specified person," and in § 6 it is provided that "a straight bill shall have placed plainly upon its face by the carrier issuing it 'nonnegotiable' or 'not negotiable.'" The trial court finds that the present bill of lading was a straight bill, and plainly marked nonnegotiable. Section 29 is as follows: "A bill may be transferred by the holder by delivery, accompanied with an agreement, express or implied, to transfer the title to the bill or to the goods represented thereby. A straight bill can not be

negotiated free from existing equities, and the indorsement of such a bill gives the transferee no additional right." Other relevant sections of the Act are set forth in the footnote.

The very evident intention and accomplishment of the Act is to make straight bills nonnegotiable, and if the form of indorsement by defendant to the Bridgeport Iron & Metal Company might, standing by itself, be regarded as an attempt to convert the bill into an order bill, such would be an alteration after issue, without authority from the carrier, and void under § 13 as well as futile under § 29. It is clear, then, that the form of the indorsement worked no change in the nature or effect of the bill, that it continued to be nonnegotiable, and both as to the original and subsequent transferees, it is to be treated as subject to such limitations as are imposed by law upon such bills.

As between the defendant American Company as the seller and the Bridgeport Iron & Metal Company as the original buyer and transferee, the rights and reme-

§ 13.   That any alteration, addition, or erasure in a bill after its issue without authority from the carrier issuing the same, either in writing or noted on the bill, shall be void, whatever be the nature and purpose of the change, and the bill shall be enforceable according to its original tenor.

§ 32.   That a person to whom a bill has been transferred, but not negotiated, acquires thereby as against the transferor the title to the goods, subject to the terms of any agreement with the transferor.   If the bill is a straight bill such person also acquires the right to notify the carrier of the transfer to him of such bill and thereby to become the direct obligee of whatever obligations the carrier owed to the transferor of the bill immediately before the notification.   Prior to the notification of the carrier by the transferor or transferee of a straight bill the title of the transferee to the goods and the right to acquire the obligation of the carrier may be defeated by garnishment or by attachment or execution upon the goods by a creditor of the transferor, or by a notification to the carrier by the transferor or a subsequent purchaser from the transferor of a subsequent sale of the goods by the transferor.

dies of an unpaid seller, including the right of stoppage *in transitu* in case of the buyer's insolvency, manifestly would obtain. General Statutes, §§ 4719, 4723, 4725, 4728; *Interstate Window Glass Co.* v. *New York, N.H. & H.R.Co.*, 104 Conn. 342, 133 Atl. 102. "Where a bill of lading is outstanding for the goods, the seller is not driven to rely upon the doctrine of stoppage *in transitu* unless the bill is either a straight bill of lading to the buyer, or unless, if negotiable in form, it has come into the hands of the buyer, either by delivery, if it originally ran to the buyer's order, or by indorsement and delivery, if it ran to the seller's order. Where the bill is a straight or nonnegotiable bill to the buyer, there can be no doubt of the applicability of the doctrine of stoppage *in transitu*. This is the typical case where the doctrine should be permitted." 2 Williston on Sales (2d Ed.) § 542.

And the sale of the goods by the buyer while they are in transit does not deprive the seller of his right to stop the goods. Unless a *negotiable* document of title is negotiated for value, or the seller has consented to the subsale, the right of stoppage *in transitu* still remains. General Statutes, § 4728; 2 Williston on Sales (2d Ed.) § 538. Since the bill of lading here was not a "negotiable document of title," this established principle of the law of sales would seem to be, of itself, sufficient to sustain the defendant's right of stoppage *in transitu* as against these plaintiffs as well as against the original buyer. The existence of such right is, however, further confirmed by provisions of the Federal Bills of Lading Act, especially § 29, hereinbefore quoted.

In *Quality Shingle Co.* v. *Old Oregon Lumber & Shingle Co.*, 110 Wash. 60, 187 Pac. 705, the controlling facts were strikingly similar to those of the present case. The plaintiff, consignor and consignee of a car-

load of shingles, received, indorsed in blank, and delivered a straight bill of lading to Shepard-Traill Company, from which company the defendant purchased and paid for the shingles and took the bill of lading, so indorsed. Before the defendant obtained possession of the shingles or any right therein other than as evidenced by the bill of lading, the plaintiff, because of nonpayment of a check given it by Shepard-Traill Company in payment for the shingles, claimed ownership of the property, and so notified the defendant and the carrier. The decisive question was whether or not the assignment of the bill of lading from Shepard-Traill Company to the defendant vested in the latter a title superior to that possessed by Shepard-Traill Company as against the plaintiff. In affirming a judgment for the plaintiff, the court held that the language of the Federal Act (§§ 2 and 29) places the assignee of a straight bill of lading in all respects in the shoes of his assignor, so that "whatever right, legal or equitable, may exist in the property described in the bill of lading in favor of someone other than the assignor of the bill of lading as against him, continues to exist as against his assignees."

In *Getchell v. Northern Pac. Ry. Co.*, 110 Wash. 66, 187 Pac. 707, a case similar to the foregoing except that in the bill of lading a party other than the consignor was named as consignee, the same court held that "a straight bill of lading, whether naming another than the consignor as consignee or naming the same person as both consignor and consignee and thereafter assigned to another, is not evidence of superior title in anyone other than the consignor, to the property herein specified." See also *Hinrichs, Inc. v. Standard Trust & Savings Bank,* 279 Fed. 382.

Under provisions of State bills of lading statutes which are similar to § 29 of the Federal Act (as is

§ 4642 of the General Statutes) it is held that indorsement of a nonnegotiable bill of lading is ineffectual to confer any additional right and the transferee obtains only such interest as the transferor had. *Ward-Lewis Lumber Co.* v. *Mahony* (Cal.) 234 Pac. 417; *Brown* v. *Floersheim Mercantile Co.*, 206 Mass. 373, 375, 92 N.E. 494; *Dewberry-Hargett Co.* v. *Arkansas State Bank*, 164 *Ark.* 223, 261 S.W. 301.

Again, the limited and conditional character of the title contemplated by the Federal Act as passing by the transfer of a straight bill is manifested by the provisions in § 32 as to rights of creditors of, or subsequent purchasers from, the transferor, prior to notification, to the carrier, of the transfer.

The trial court was correct in concluding that the nonnegotiable bill of lading issued to the defendant American Company, remained such notwithstanding the indorsement of it; that the plaintiffs were chargeable with knowledge of the nature of the bill and the title they obtained thereby (which conclusion eliminates any question of estoppel); and that the defendant retained the right to stop the goods *in transitu* and effectively exercised that right, and hence was entitled to recover their agreed value.

There is no error.

In this opinion the other judges concurred.