[No. 21278.   Department Two.   October 9, 1928.]

CASHMERE FRUIT GROWERS UNION, *Respondent*, v.
GREAT NORTHERN RAILWAY COMPANY,
*Appellant*.

WENATCHEE FEDERATED GROWERS, INCORPORATED, *Respondent*, v. GREAT NORTHERN RAILWAY COMPANY,
*Appellant*.

F. L. WOOD, *Respondent*, v. GREAT NORTHERN RAILWAY
COMPANY, *Appellant*.[1]

[1]Reported in 270 Pac. 1038.

320

*Ernest E. Sargent, Charles S. Albert, T. T. Grant,*
and *Richards, Gilbert & Conklin,* for appellant.
*Herr, Bayley, Croson & Innis,* for respondent.

ASKREN, J.—This appeal presents seven causes of
action which were tried together in the superior court
because, in the main, the important questions presented
were common to all.

The Cashmere Fruit Growers Union, a corporation,
sold four cars of apples, the Wenatchee Federated
Growers, Inc., a corporation, two cars, and F. L. Wood,
one car, to Denny & Company. These sales were made
through the agent of the sellers, Gwin, White & Prince,
Inc., who are engaged in marketing such product. The·
apples were duly loaded for shipment, and straight
bills of lading issued by the appellant railroad there-
for. These bills of lading were delivered to Gwin,
White & Prince, who, upon delivery of draft by Denny
& Company for the purchase price, surrendered to that
company the bills of lading.

The consignee in five of the cases was Denny &
Company at Minneapolis; and in the other two, C. I.,
and M. Dingfelder, New York. The drafts issued by
Denny & Company were dishonored due to insolvency,
and the apples remained unpaid for. The respondents

immediately, through Gwin, White & Prince, Inc., gave both oral and written notice to appellant to stop all of the seven cars in transit. Accompanying said request, was an order by each of the sellers directing appellant to divert the cars to Gwin, White & Prince, at Chicago. However, the appellant refused to comply with the requests to stop delivery of the cars, and it delivered them to C. I., and M. Dingfelder at Minneapolis, who claimed the cars by reason of certain transactions had with Denny & Company. Dingfelder took possession of the cars and sold the apples. These suits were then started against the appellant for conversion of the seven cars of apples.

We shall first turn to the question of the right to stop *in transitu*, since the failure of this right would be fatal to respondent's cause of action.

The bills of lading issued by appellant were what are known as straight bills of lading, which are distinguished from order bills of lading chiefly because of their lack of complete negotiability. Under the Federal Bills of Lading Act, United States Code 1926, § 109, we find the provisions regarding the negotiability of such bills as were here issued. The act, § 109, provides:

"Transfer of bill by delivery; negotiation of Straight Bill. A bill may be transferred by the holder by delivery, accompanied with an agreement, expressed or implied, to transfer the title to the bill of the goods represented thereby. A straight bill cannot be negotiated free from existing equities, and the endorsement of such a bill gives the transferee no additional right."

We have heretofore construed this provision in *Quality Shingle Co. v. Old Oregon L. & S. Co.*, 110 Wash. 60, 187 Pac. 705, and its companion case *Getchell v. Northern Pacific R. Co.*, 110 Wash. 66, 187 Pac. 707,

where we held, in effect, that the provisions of the act gave the consignor a right in the property shipped which could not be defeated by the transfer or assignment of the bill of lading to another, even though the third person be an actual *bona fide* purchaser for value. See, also, *Kasden v. New York, N. H. & H. R. Co.,* 104 Conn. 479, 133 Atl., 573.

A slightly different question, however, is presented here. As to four of the cars, within a few hours after the straight bill of lading had been issued, and received by Denny & Company in exchange for the drafts, Denny & Company had exchange bills of lading issued therefor, naming C. I. and M. Dingfelder as consignee. As to two of the remaining three cars, Dingfelder was already named as the original consignee.

Appellant now urges that, as to the four cars on which exchange bills of lading were issued, from the moment such bills came into existence there was created a new delivery or a new carriage of the apples. It is said that, when Dingfelder was named as consignee in these new bills, respondents lost all rights of stoppage. This assumes that Dingfelder is shown by the evidence to either be a purchaser for value or as having rights superior to the respondents.

The evidence discloses clearly that Dingfelder was Denny & Company's agent for the disposal of the goods and that, in legal effect, the naming of Dingfelder as consignee changed the situation not in the least. The apples belonged to Denny & Company, and were to be, by Dingfelder, sold and the proceeds turned over to Denny & Company, less advances made to them. In this connection it may be well to say that respondents had no knowledge of the issuance of the exchange bills of lading, nor did Dingfelder at any time prior to the arrival of the apples at Minneapolis take any delivery of them. The name of the consignors

was the same on the exchange bill of lading as on the original bill. In the *Getchell v. Northern Pac. R. Co.,* case, and *Quality Shingle Co. v. Old Oregon L. & S. Co., supra,* the stipulated facts show, although not expressly mentioned in the opinion, that exchange bills of lading had been issued.

While, under the weight of authority, either actual or constructive delivery is sufficient to defeat the right of stoppage, it seems perfectly clear that, prior to the notice to stop, there was no delivery of the goods to Dingfelder, and that Denny & Company had received no delivery such as would establish a claim that they had received under the straight bill of lading issued to the consignors, and therefore had started, a new carriage of the shipment. See *Northern Grain Co. v. Wiffler,* 223 N. Y. 169, 119 N. E. 393, 7 A. L. R. 1370, and note.

An interesting case upon the question is *In re Nesto,* 270 Fed. 503, where a buyer, after the goods shipped to him had arrived at Pittsburg, the point designated in the bill of lading, re-consigned the goods to himself under an assumed business name at New York. The goods being unpaid for and the buyer being insolvent, the seller sought to exercise the right of stoppage. A receiver appointed for the buyer's business sought to claim the goods upon the theory that, since they had arrived in Pittsburg, the original point of destination, the carriage under the original bill of lading was at an end, and that a re-consignment by the buyer to himself at New York was a new shipment. But the court held that there had been no delivery to the buyer sufficient to support a claim of a new shipment. The court there observed, with a persuasiveness that appeals to us as being logically sound, the following:

"That there was no actual delivery is not seriously disputed. When the car reached Pittsburg the carrier

notified Nesto of its arrival. Without assuming possession of the same, and, so far as we are shown, without seeing the car, Nesto immediately reconsigned it to himself under a new name at a new destination. From the very nature of the transaction there was no actual delivery to Nesto at Pittsburgh. His reconsignment of the car to himself, although under an assumed name, was a declination by him to accept delivery at Pittsburgh and an affirmation of his intention to accept delivery at New York. Was there constructive delivery? While ordinarily the law would raise a delivery by construction under circumstances which bring the goods within the dominion of the purchaser, *In re W. A. Paterson Co.*, 186 Fed. 629; *Diehl, Adm'r, v. McCormick*, 143 Pa. 584, 22 Atl. 1033; 24 R. C. L. 146; where he has exercised full control over them by *bona fide* recognizing them, the law will not hold a delivery as constructive—that is, the law will not construe as done that which was really not done—in aid of an obviously fraudulent transaction. *Rosenthal v. Dessau*, 11 Hun (N. Y.) 49.

"Therefore we hold that at the time the Macaroni Company notified the carrier at New York of its right to stop the shipment *in transitu*, delivery, either actual or constructive, had not been made to the buyer; under either his real or fictitious name, and therefore, as against Nesto, the Macaroni Company's right to stoppage *in transitu* was preserved."

We are constrained to hold that, as to all cars, the right of stoppage existed, and that due notice of the exercise thereof was given.

■ Next it is contended that respondent cannot maintain the action because no claim for loss was filed with appellant as required by the bill of lading. The specific section is division B of Section 2, and reads in part as follows:

"Claims for loss, damage, or injury to property must be made in writing to the originating or delivery carrier or carriers issuing this bill of lading within six months after delivery of the property (or, in case of

export traffic, within nine months after delivery at port of export), or, in case of failure to make delivery, then within six months (or nine months in case of export traffic) after a reasonable time for delivery has elapsed; provided that if such loss, damage or injury was due to delay or damage while being loaded or unloaded, or damaged in transit by carelessness or negligence, then no notice of claim nor filing of claim shall be required as a condition precedent to recovery. Suits for loss, damage, injury or delay shall be instituted only within two years and one day after delivery of the property, or in case of failure to make delivery, then within two years and one day after a reasonable time for delivery has elapsed; Provided, That in case the claim on which suit is based was made in writing within six months, or nine months in case of export traffic (whether or not filing of such claim is required as a condition precedent to recovery), suit shall be instituted not later than two years and one day after notice in writing given by the carrier to the claimant that the carrier has disallowed the claim or any part or parts thereof specified in the notice.''

While there are several answers to this question, the controlling one, we think, is that the suit is not brought upon the contract of carriage, but sounds in tort. Upon the arrival of the cars in Minneapolis, due notice of stoppage having been received, the contract of carriage had ended—the cars belonged to respondent and were subject to be delivered to them upon request. The delivery, knowingly, to another was a conversion of the cars for which suit was brought. *Rosenthal v. Weir,* 170 N. Y. 148, 63 N. E. 65, 57 L. R. A. 725.

Some argument is made that respondents cannot maintain these actions because no tender was made of the freight charges that had accrued. The point is highly technical. It appears that the business arrangement between the shippers here and the appellant are such as to fully protect the appellant for the freight

on all cars shipped. There was no request that the freight be paid, nor is there the slightest intimation that respondents were unwilling to pay the same. On the contrary, the record discloses that appellant decided the legal status of the cars according to its own view and thereupon made delivery in defiance of respondents' orders. More said upon this point would be too much.

■ Further contention is made that, since the notice to stop in transit was made by Gwin, White & Prince, Inc., instead of the respondents heretofore named as shippers, it was ineffective. This, upon the theory that the shippers alone can exercise the right of stoppage. Such an argument leaves out of consideration the fact that Gwin, White & Prince, Inc., were the agents for the shippers, handled the transactions for them, and were known by appellant to be such. Such a situation was presented that so far as the rights of the parties were concerned, a notice by Gwin, White & Prince, Inc., was a notice by the shippers. But here again the point urged has little substance.

The appellants, according to the written evidence, never refused to recognize the notice upon the ground that it should have been given in the name of the consignors or shippers named in the bills of lading; but, on the contrary, recognized the notice and refused to follow it on the grounds we have heretofore set out, namely: that right of stoppage did not exist after the consignee had obtained a claimed diversion of the shipment. Indeed, the wire sent by appellant in response to the notice was addressed to the Wenatchee-Okanogan Co-op Federation, care Gwin, White & Prince, Inc. The federation named in the wire is a corporation organized as a trade association and advisor of its members which include all the shippers in this suit. The appellant thus recognized the part Gwin, White

& Prince, Inc., played in the transaction and their authority.

■ Another assignment of error is that the court erred in making parties plaintiff Gwin, White & Prince, Inc. It appears that, a question arising on the trial as to whether Gwin, White & Prince, Inc., should be made a party plaintiff, due to the fact that it had paid to the shippers the sum due on the original consignment and taken a receipt therefor which the court construed as an assignment of the claim, the court made Gwin, White & Prince, Inc., a party to the action; although respondents insisted then and do now that they were not necessary parties and that the shippers retained such an interest in the claims as entitled them to maintain the suit. While, if necessary to be decided, we might hold the transaction between Gwin, White & Prince, Inc., and the shippers one whereby it became unnecessary to make the corporation a party, we are still of the view that the action of the court could in no event be prejudicial. It is obvious that all of the parties that claimed or could claim any interest in and to a recovery were before the court, and all were bound by the court's decision. Appellant is therefore fully protected in payment of the judgment entered against any further claim. The adding of Gwin, White & Prince, Inc., as a party plaintiff in no respect changed the issues in the case.

Other questions have been carefully examined and found insufficient to reverse the judgment, which is affirmed.

FULLERTON, C. J., MAIN, and BEALS, JJ., concur.