**PORKY PRODUCTS, INC., Plaintiff,**

v.

**NIPPON EXPRESS U.S.A. (ILLINOIS), INC., Nippon Express U.S.A., Inc., individually and as agent for Nippon Express U.S.A. (Illinois), Inc., and Nippon Express Co., Ltd., individually and as agent for Nippon Express U.S.A. (Illinois), Inc., Defendants.**

**No. 95 Civ. 5037 (MBM) (SEG).**

United States District Court, S.D. New York.

Aug. 21, 1997.

---

Harold L. Kofman, Riker, Danzig, Scherer, Hyland & Perretti, Morristown, NJ.

Stephen H. Vengrow, Cichanowicz, Callan & Keane, New York City.

## OPINION

GRUBIN, United States Magistrate Judge.

Plaintiff has brought this case in diversity alleging breach of contract and conversion. By consent of the parties, it has been assigned to me for all purposes pursuant to 28 U.S.C. § 636(c). The significant facts of the case are undisputed, and all parties have moved for summary judgment. For the following reasons, judgment is granted to plaintiff against all defendants in the amount of $77,569.97 plus prejudgment interest and costs.

## FACTUAL BACKGROUND

Plaintiff Porky Products, Inc. ("Porky") is a New Jersey corporation which sells meat products. In February 1995, Daiichi Bussan Co., Ltd. ("Daiichi Bussan"), a Japanese company, placed four orders with Porky for meat products to be delivered to it in Japan. Porky contacted Nippon Express U.S.A., Inc. ("NEU"), a New York corporation, to arrange the transport. NEU issued four bills of lading which showed Nippon Express U.S.A. (Illinois), Inc. ("NEI") as carrier and were signed by NEU "AS AGENT FOR THE CARRIER." NEI, a subsidiary of NEU, is a non-vessel operating common carrier, and NEU is the agent appointed by NEI to conduct business on its behalf in the United States. The bills of lading were forwarded to Porky, and Porky turned them over, unaltered, to its bank, Standard Chartered Bank, which forwarded them to Daiichi Bussan's bank, Fuji Bank, in Japan. Each bill of lading contained on its face in the upper right-hand corner the following provision: "This Bill of Lading duly endorsed must be surrendered in exchange for the goods or delivery order" ("surrender clause"). Standard Chartered Bank also sent to Fuji Bank sight drafts and "Collection Instructions" for each order which stated, *inter alia,* the following: "Documents are to be release[d] against payment."

NEU loaded the shipment onto two ships, and Nippon Express Co., Ltd. ("NEC"), NEU's parent corporation headquartered in Japan and NEU's and NEI's sole agent in Japan, was responsible for proper release of the cargo upon arrival in Japan. NEC released the shipment to Daiichi Bussan without receipt of either the bills of lading or payment for Porky. Instead, NEC took letters of guarantee from Daiichi Bussan to hold it harmless from any liability arising out of release of the shipment without the bills of lading. Because Daiichi Bussan never made payment of the sight drafts to Fuji Bank or Porky, it never obtained possession of the bills of lading that had been sent to Fuji Bank. In March 1995 Daiichi Bussan filed bankruptcy proceedings in Japan, and plaintiff has not been paid the $92,059.89 owed for the orders.[1]

## DISCUSSION

Under Fed.R.Civ.P. 56(c), a motion for summary judgment must be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The moving party must initially satisfy a burden of demonstrating the absence of a genuine issue of material fact, which can be done merely by pointing out that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The nonmoving party then must meet a burden of coming forward with "specific facts showing that there is a genuine issue for trial," Fed. R.Civ.P. 56(e), by "a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. at 322.

The court "must resolve all ambiguities and draw all reasonable inferences in favor of the party defending against the motion." *Eastway Constr. Corp. v. City of New York,* 762 F.2d 243, 249 (2d Cir.1985); *see also Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Hathaway v. Coughlin,* 841 F.2d 48, 50 (2d Cir.1988); *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 11 (2d Cir.1986), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987). But the court is to inquire whether "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party," *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), and to grant summary judgment where the nonmovant's evidence is irrelevant or merely colorable, conclusory, speculative or not significantly probative.

---

1. Plaintiff, who filed a claim in the bankruptcy proceeding has now received an award of $14,-489.92 from the Japanese bankruptcy court. This is the total sum plaintiff can receive from the bankruptcy estate.

*Id.* at 249–50; *Knight v. U.S. Fire Ins. Co.,* 804 F.2d at 12, 15; *Argus Inc. v. Eastman Kodak Co.,* 801 F.2d 38, 45 (2d Cir.1986), *cert. denied,* 479 U.S. 1088, 107 S.Ct. 1295, 94 L.Ed.2d 151 (1987). To determine whether the non-moving party has met his or her burden, the court must focus on both the materiality and the genuineness of the factual issues raised by the nonmovant. As to materiality, "it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs," and a dispute over irrelevant or unnecessary facts will not preclude summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 248. In sum, if the court determines that "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.' " *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting *First Nat'l Bank v. Cities Service Co.,* 391 U.S. 253, 289, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)).

 A bill of lading is a contract between a shipper and a carrier and, thus, is subject to the law of contract. *International Knitwear Co. v. M/V ZIM CANADA,* No. 92 Civ. 7508(PKL), 1994 WL 924203 at *3, 1994 U.S.Dist. LEXIS 14180 at *8 (S.D.N.Y. Oct. 6, 1994). It is, moreover, a contract of adhesion by the carrier and therefore is to be strictly construed against that carrier. *Allied Chemical Int'l Corp. v. Companhia de Navegacao Lloyd Brasileiro,* 775 F.2d 476, 482 (2d Cir .1985); *Mitsui & Co. v. American Export Lines, Inc.,* 636 F.2d 807, 822–23 (2d Cir.1981); *International Knitwear Co. v. M/V Zim Canada,* 1994 WL 924203 at *3, 1994 U.S.Dist. LEXIS 14180 at *8. The court's duty in a case involving a contractual dispute is to determine the intent of the parties and to give effect to their intentions as expressed in the agreement. *Record Club of America, Inc. v. United Artists Records, Inc.,* 890 F.2d 1264, 1271 (2d Cir.1989). If a contract is found to be ambiguous on an issue, extrinsic evidence of the parties' intent may be considered to determine what meaning is to be ascribed to the contract. *See Sayers v. Rochester Tel. Corp. Supplemental Mgmt. Pension Plan,* 7 F.3d 1091, 1095 (2d Cir.1993); *Brass v. American Film Technol-*

*ogies, Inc.,* 987 F.2d 142, 149 (2d Cir.1993); *Curry Road Ltd. v. K Mart Corp.,* 893 F.2d 509, 511–12 (2d Cir.1990). And, "when resort to extrinsic evidence is necessary to shed light on the parties' intent summary judgment ordinarily is not an appropriate remedy ... and must be denied unless, viewing the evidence in a light most favorable to the nonmovant and resolving all doubts in its favor, no reasonable trier of fact could find against the movant." *Christiania General Ins. Corp. v. Great American Ins. Co.,* 979 F.2d, 268, 274 (2d Cir.1992); *John Hancock Mut. Life Insur. Co. v. Amerford Int'l Corp.,* 22 F.3d 458, 461 (2d Cir.1994) ("In a contract dispute, a motion for summary judgment may be granted only where the agreement's language is unambiguous and conveys a definite meaning").

 However, when language contained in a contract is clear or where any ambiguity may be resolved by reference to other parts of the contract itself, the court is to construe the contract and grant summary judgment without reference to extrinsic evidence. *Sayers v. Rochester Tel. Corp. Supplemental Mgmt. Pension Plan,* 7 F.3d at 1094–95; *Brass v. American Film Technologies, Inc.,* 987 F.2d at 148; *International Knitwear Co. v. M/V Zim Canada,* 1994 WL 924203 at *3, 1994 U.S.Dist. LEXIS 14180 at *8–9. A contract provision is not ambiguous "when it has a definite and precise meaning, unattended by danger of misconception in the purport of the [contract] itself, and concerning which there is no reasonable basis for a difference of opinion." *John Hancock Mut. Life Insur. Co. v. Amerford Int'l Corp.,* 22 F.3d at 461 (citations omitted). Furthermore, the Second Circuit has emphasized that "ambiguity itself is not enough to preclude summary judgment" where there is no relevant extrinsic evidence of the parties' actual intent. *Mellon Bank, N.A. v. United Bank Corp.,* 31 F.3d 113, 116 (2d Cir.1994); *Williams and Sons Erectors, Inc. v. South Carolina Steel Corp.,* 983 F.2d 1176, 1183–84 (2d Cir.1993). "Whether an ambiguity exists in a contract is a threshold question of law to be resolved by the court." *Brass v. American Film Technologies, Inc.,* 987 F.2d at 149. *See also International Knitwear Co. v. M/V Zim Canada,*

1994 WL 924203 at *4, 1994 U.S.Dist. LEXIS 14180 at *9–10.

■ The instant case is a simple one, made seemingly complex by the defendants' contentions on these motions which lengthily argue positions that would alter centuries of clearly established principles of contract law and negate case law that has dealt with essentially the same events involved here. In *Pere Marquette R Co v. J F French & Co.,* 254 U.S. 538, 41 S.Ct. 195, 65 L.Ed. 391 (1921), where the bill of lading had contained the clause "The surrender of this original bill of lading properly endorsed shall be required before delivery of the property," the Supreme Court held that this provision resulted in liability on the carrier who delivered the goods without insisting on the production and surrender of the bill of lading where the shipper suffered a loss as a result. The Court pointed out that "[s]uch liability arises, *not from the statute [the predecessor to the Pomerene Act], but from the obligation which the carrier assumes under the bill of lading.*" 254 U.S. at 546 (emphasis added). Similarly, in *Iowa Beef Processors, Inc. v. Grand Trunk Western R.R. Co.,* 493 F.2d 665 (6th Cir.1974), where the bills of lading required the defendant to obtain them prior to delivery to the consignee, defendant was held liable because it *"breached the condition* of the bill of lading." 493 F.2d at 666 (emphasis added). In *Allied Chemical Int'l Corp. v. Companhia de Navegacao Lloyd Brasileiro,* 775 F.2d 476 (2d Cir.1985) the Second Circuit pointed out that " '[d]elivery to a person not entitled to the goods without production of the bill of lading is prima facie a conversion of the goods and a *breach of contract.*' " 775 F.2d at 482 (emphasis added) (quoting 2 T.G. Carver, Carriage by Sea ¶ 1593 (13th ed.1982)). In *B.M.A. Industries, Ltd. v. Nigerian Star Line, Ltd.,* 786 F.2d 90 (2d Cir. 1986), the Second Circuit affirmed a grant of summary judgment by this court to the plaintiff for *breach of contract* by the carrier who delivered the cargo against a warehouse delivery order instead of the original bills of lading where the bills stated, "Cargo to be released only against submission of original duly endorsed bills of lading." 786 F.2d at 91. In *C–ART, Ltd. v. Hong Kong Islands Line America, S.A.,* 940 F.2d 530 (9th Cir.1991),

again like here, bills of lading stated delivery was to be made only "upon surrender of the original, properly endorsed bill of lading." 940 F.2d at 532. The Ninth Circuit, quoting the Second Circuit in *Allied Chemical* with approval, explained simply that the carrier, which had delivered the goods in exchange for a corporate guaranty rather than the actual bills of lading, was liable to the shipper for *breach of contract. International Knitwear Co. v. M/V Zim Canada,* 1994 WL 924203, 1994 U.S.Dist. LEXIS 14180 (S.D.N.Y. Oct. 6, 1994), is a decision of particular import because it presented a situation factually identical to that here. A shipment of goods by the carrier, Zim Israel Navigation Company, was pursuant to a bill of lading issued by Zim that contained the provision "One of the originals of this Bill of Lading must be surrendered duly endorsed in exchange for the goods or Delivery Order." 1994 WL 924203 at *1, 1994 U.S.Dist. LEXIS 14180 at *3. As here, the carrier delivered the goods to the consignee in exchange for a letter of guarantee rather than the bill of lading. As here, the original bill of lading was being held by a bank which had received a collection instruction that the bill of lading was to be released to the consignee only upon payment, and the consignee had not paid. The Honorable Peter K. Leisure granted summary judgment to the plaintiff on its breach of contract claim, finding that the surrender clause was "unambiguous and convey[ed] a definite meaning" and that "reasonable persons could not read this passage of the bill and differ as to its clear meaning." *Id.* 1994 WL at *4, 1994 U.S.Dist. LEXIS at *11. Judge Leisure further held that "even assuming arguendo, that there were some ambiguity in the bill of lading," the extrinsic evidence supported the plain reading of the language of the bill of lading, pointing specifically to the letter of guarantee in which, like here, the consignee agreed to hold the carrier harmless of any liability that might result from releasing the goods without presentation of the bill of lading. Judge Leisure reasoned:

> If the clause of the bill at issue herein had been of no effect, and if the bill had been a straight bill, the consignee would not have

needed to produce an original bill in order to receive the goods and, accordingly, Stateside would not have presented carrier with a letter of indemnification, agreeing to hold defendants harmless of any liability that they might suffer in releasing the freight "without presentation of an original bill of lading."

*Id.* 1994 WL at *6, 1994 U.S.Dist. LEXIS at *16.

Defendants attempt to distinguish this long line of authority evidenced by these and other cases in a variety of novel but misplaced ways. They hang their hat largely on their contention that the bills of lading involved herein were nonnegotiable rather than "order" or negotiable bills of lading as were involved in most of the foregoing cases.[2] However, whether the bills were negotiable or nonnegotiable is relevant to a statutory claim for conversion under the Pomerene Act, but not relevant to a breach of contract claim, and liability in each of those cases cited above was founded on breach of contract. Parties can agree to any terms they wish in a contract. The Pomerene Act would impose liability on a carrier who delivers goods to a person not in possession of the bill of lading unless the delivery is to a consignee named in a nonnegotiable bill of lading. Insofar as I find defendants liable contractually under plaintiff's first claim, it is not necessary to rule on the alternative statutory claim. Defendants, however, have intertwined the concept of negotiability in much of their argument and contended that the surrender clause would only apply to a negotiable bill of lading. Despite the conceptual confusion of the defendants' arguments in their papers, they do acknowledge that "on the breach of contract claim … whether or not the bills of lading are negotiable … is irrelevant." *See* Transcript of Conference, July 28, 1997, p. 6. While the negotiability of the bills of lading is, thus, irrelevant, nevertheless, because of the defendants' focus on this aspect of the bills of lading in their papers, I will depart briefly from the preferred procedure of not ruling on issues irrelevant to a decision, so defendants may be aware that I reject their contention of nonnegotiability in any event.

The Pomerene Act defines a negotiable bill of lading as one that "(A) states the goods are to be delivered to the order of a consignee; and (B) does not contain on its face an agreement with the shipper that the bill is not negotiable." 49 U.S.C. § 80103(a). A nonnegotiable bill of lading is one which "states that the goods are to be delivered to a consignee." *Id.* § 80103(b). The Act requires that "[a] common carrier issuing a nonnegotiable bill of lading must put 'nonnegotiable' or 'not negotiable' on the bill." *Id.* There is no dispute herein that the bills of lading did not contain the words "nonnegotiable" or "not negotiable" or any agreement with Porky that they were nonnegotiable, nor did they state delivery was to be "to the order of" Daiichi Bussan. Despite the absence of any term of nonnegotiability, defendants claim the bills were nevertheless nonnegotiable because they did not contain the words "to order" which, defendants say, are "magic words of negotiability" without which a bill can never be a negotiable one. They further maintain that the surrender clause was inapplicable to these bills of lading because it had to be meant to apply only to negotiable bills of lading. This they deduce from its use of the words "duly endorsed," reasoning that only a negotiable instrument can be endorsed. The argument goes as follows:

> The surrender clause says that, "This Bill of Lading *duly endorsed* must be surrendered in exchange for the goods or delivery order." (Emphasis added.) The word "duly" means "according to legal requirements." Black's Law Dictionary, *supra,* p. 501 (col.2). "Endorsements" are signatures placed on *negotiable* instruments or documents. *Id.,* at p. 774 (col.1). Therefore, the phrase "duly endorsed" explicitly refers to situations in which the bill of lading has been issued as a negotiable (i.e., "TO ORDER") document, and the

---

**2.** With respect to *International Knitwear Co. v. M/V Zim Canada*, the opinion of Judge Leisure involving a virtually identical situation, defendants contend (a) that certain arguments they present here were not presented to Judge Leisure there and, thus, he ruled incorrectly and (b) that on those contentions with which he was presented, he was simply erroneous.

clause requires such bills to be indorsed, in the manner required by law, by the person who presents it. See, 49 U.S.C.A. § 80104(a) and § 80110(b)(3)(B).

However, the bills of lading are *nonnegotiable ....* Nonnegotiable documents cannot be "duly endorsed" since they are not negotiable and the law makes no provision for their indorsement. See, 49 U.S.C.A. § 80103(b)(1)(A–B); § 80104(a); § 80106(a–b); § 80110(b)(3)(B); see also, *Kasden v. N.Y., N.H. & H.R. Co.,* 104 Conn. 479, 133 A. 573, 574 (1926) [sic] (1926) (Indorsement of straight bill of lading void as well as futile under Pomerene Act). Therefore, the surrender clause cannot apply to these nonnegotiable bills.

Defendants' Moving Memorandum, pp. 16–17. Thus, defendants, claiming that these bills of lading were nonnegotiable because they did not contain the "magic" words "to order," conclude that the surrender clause, despite its prominent display on the face of the bills, does not apply because endorsements can be made only to negotiable documents. There are many reasons why this string of non sequiturs is without merit. It starts, of course, from the premise that the bills of lading are nonnegotiable. Is it not more logical and reasonable to conclude, rather, that they are negotiable since they do *not* contain the indication of nonnegotiability that *is* required by the Pomerene Act in order to make a bill nonnegotiable? Moreover, if one were to accept defendants' contention that only a negotiable bill of lading can be "endorsed," that word in the surrender clause would lead further to confirm that they *are* negotiable, rather than lead to a conclusion that the clause is of no meaning. It is hornbook law that courts are to enforce the plain words of a contract, and, furthermore, to construe a contractual provision so as to give it effect if possible, rather than to construe it as meaningless. Restatement (Second) of Contracts, §§ 202–03 (1981); *see Boyette v. Algonquin Gas Transmission Co.,* 952 F.Supp. 192, 201 (S.D.N.Y.1997). Defendants, in a bow of acknowledgement to this principle, boldly state without authority that bills of lading are an exception to the rule of construction which seeks to give meaning and effect to the words of a contract. Defen-

dants' Reply Memorandum, p 10. But, even if we wish to assume with defendants that the bills were nonnegotiable, another answer to their argument is that an "endorsement" is not an act performed only to a negotiable document. The Pomerene Act itself recognizes this by providing that "The indorsement of a nonnegotiable bill does not—(A) make the bill negotiable; or (B) give the transferee any additional right [*i.e.,* beyond the rights of the shipper transferor]." 49 U.S.C. § 80103(b)(1). An "endorsement" moreover may be used for many purposes besides an assignment or transfer of the document (*e.g.,* to acknowledge receipt of a document).

It must be noted finally that these very arguments were made to this court by the carrier in the *International Knitwear* case and squarely rejected by Judge Leisure. In language wholly applicable to the instant case the judge wrote:

> Finding as this Court does, that the language on the front of the bill of lading was a clear, unambiguous, term of the contract, the Court need not reach the issue of whether the bill at issue was a negotiable bill or a straight bill, because the plain terms of the contract must govern. However, the Court notes the passing observation that, the absence of the words "to order" aside, the parties appear to have conducted themselves as if the bill at issue were negotiable.... Additionally, section 86 of the Bills of Lading Act, codified at 49 U.S.C. Appx. §§ 81–124, which governs bills of lading for goods in interstate commerce, and which defendant contends should be applicable in the instant action, requires that any nonnegotiable, straight bill of lading "have placed plainly upon its face by the carrier using it 'nonnegotiable' or 'not negotiable.' " 49 U.S.C. § 86. *See Gold Medal Trading Corp. v. Atlantic Overseas Corp.,* 580 F.Supp. 610, 612 (S.D.N.Y.1984). The bill at issue bore no such legend.

1994 WL 924203 *5, n. 2, 1994 U.S.Dist. LEXIS 14180 at *14, n. 2. Judge Leisure moreover pointed out that the fact that the bill of lading was being held by the bank on a "cash against documents basis" demonstrat-

ed that it was intended to be negotiable, delivered against payment and to be surrendered "duly endorsed" in exchange for the shipment. *Id.* 1994 WL at \*6, U.S.Dist. LEXIS at \*16. Defendants' answer to Judge Leisure's holding, that he erred, *see* Defendants' Reply Memorandum, p. 8, must be rejected.

Defendants also argue that even if the surrender clause is applicable to these bills of lading, they were permitted to contravene it because its requirement is a carrier's right rather than a carrier's obligation and a carrier can, therefore, unilaterally waive the provision. They say that because the bills of lading were contracts of adhesion issued by them containing this provision, the provision must have been intended to benefit them and they were entitled to ignore it. Defendants note that Judge Leisure in *International Knitwear* interpreted the clause's requirement as the carrier's obligation; but, since their argument that it is instead the carrier's right rather than obligation was never made by the defendant in *International Knitwear,* they opine that if it had been made the judge would have ruled differently. They quote Vincent Bugliosi: " 'So often in life things are only obvious once they are pointed out.' ... *Outrage,* p. 258 ... (W .W. Norton & Co.1996)." Defendants' Reply Memorandum, p. 9. I, however, remain unpersuaded. If defendants were correct, that because a carrier issued the bill of lading any of its provisions that the carrier believed was for its benefit could simply be "waived" without consent or even knowledge of the shipper, a contract would no longer be a contract. One party to it—here, the plaintiff—would be unable to rely on its provisions being enforceable subject to an interpretation of for whose "benefit" any provision was included in the agreement. In any event, in the instant case, even if we view the surrender clause as intended by the carrier to protect itself, which is, to be sure, a reasonable construction, it is quite obvious that it also benefits the shipper. Indeed, had it been complied

with, plaintiff here would not have suffered the damage at issue, as the Supreme Court pointed out in *Pere Marquette R Co v. J F French & Co.,* 254 U.S. at 546. Defendants' contention that "[i]f this were a case in which the *plaintiff* had typed or stamped the surrender clause onto the bill of lading forms, then plaintiff's proposed construction would seem more reasonable," Defendants' Reply Memorandum, p. 12, is mystifying. Defendants would have the plain and unambiguous words of a contract be enforceable or not depending upon which party physically drafted them into the contract. Also mystifying is defendants' contention that the surrender clause imposes an obligation on the consignee, who is to present and surrender the bill of lading to the carrier, rather than any obligation on the carrier to require it. The consignee is not a party to the contract.

## CONCLUSION

Defendants' additional arguments in their effort to divorce this case from the clear rulings of the long line of authorities cited earlier and from fundamental principles of contract law are equally frivolous.[3] As there is "no reasonable basis for a difference of opinion" as to the meaning of the words of this contract, *John Hancock Mut. Life Insur. Co. v. Amerford Int'l Corp.,* 22 F.3d at 461, judgment for breach of contract is granted to plaintiff in the amount of $77,569.97, together with prejudgment interest at the rate of 9% per annum from the date of delivery and the costs of this action.

SO ORDERED.

---

**3.** For example, defendants claim that even if the surrender clause is deemed ambiguous (rather than unambiguous requiring summary judgment in *their* favor), it should be construed against plaintiff rather than defendants who issued the contract of adhesion, because "[i]n this case it is plaintiff, and *not* defendants that claims the benefits of the clause." Defendants' Reply Memorandum, Point 4, p. 16.