696 F.2d 28
 FARRELL LINES INCORPORATED, Plaintiff-Appellee,
v.
HIGHLANDS INSURANCE COMPANY, Jomark Textiles, Inc., and
N.B.F. Import-Export Co., Defendants,
Highlands Insurance Company, Defendant-Appellant.
HIGHLANDS INSURANCE COMPANY, Plaintiff,
v.
M/V "EXPORT AMBASSADOR," her engines, boilers, etc., Farrell
Lines Incorporated, Defendants.
 No. 245, Docket 82-7275.
 United States Court of Appeals, Second Circuit.
 Argued Oct. 20, 1982.
Decided Dec. 14, 1982.
 
 Stephen A. Frank, New York City (Vincent, Berg, Russo, Marcigliano & Zawacki, New York City, Harry A. Gavalas, New York City, of counsel), for defendant-appellant Highlands Ins. Co.
 Chester D. Hooper, New York City (Haight, Gardner, Poor & Havens, New York City, Keith L. Flicker, New York City, of counsel), for plaintiff-appellee Farrell Lines Inc.
 Before OAKES and WINTER, Circuit Judges, and METZNER, District Judge.*
 PER CURIAM:
 
 
 1
 Highlands Insurance Company (Highlands) appeals from a judgment which limited its recovery against Farrell Lines Incorporated (Farrell Lines) to the loss calculated as of the time of the landing of cargo on the stringpiece of a pier in the port of Monrovia.
 
 
 2
 Highlands had insured the consignor against loss of a shipment of cartons of shoes carried on a vessel owned by Farrell Lines and destined for the consignee in Monrovia. The cargo was short when it was landed on the stringpiece. The count taken at the transit warehouse at the port showed an even greater loss. The parties do not contest the respective counts.
 
 
 3
 Highlands paid its insured $60,558.75 to cover the loss calculated from the count at the warehouse. It sought recovery of that sum from Farrell Lines which contends that its liability should be limited to $5,197.50 calculated from the count at the stringpiece.
 
 
 4
 The question to be resolved is what constitutes a proper delivery so as to determine the carrier's liability for negligence under the Harter Act, 46 U.S.C. Secs. 190-196 (1976). The Harter Act reinstated the common law duty of carriers to deliver the goods from wharf to wharf, notify the consignee of the vessel's arrival and to protect the cargo until the consignee had a reasonable opportunity to remove it. Tan Hi v. United States, 94 F.Supp. 432 (N.D.Cal., S.D.1950). These obligations are subject to modification based upon the law, regulations and custom of the port in question. Allstate Insurance Co. v. Imparca Lines, 646 F.2d 166, 168 (5th Cir.1981).
 
 
 5
 The National Port Authority of Liberia (NPA) is a governmental entity having exclusive responsibility for administering this port. NPA received the cargo at the stringpiece, placed the cargo in the transit warehouse, and subsequently delivered the cargo to the consignee.
 
 
 6
 Custom and usage at the port called for the NPA to receive the cargo at the stringpiece. At that point, the carrier relinquishes control and that would ordinarily constitute proper delivery. Constable v. National Steamship Company, 154 U.S. 51, 63, 14 S.Ct. 1062, 1067, 38 L.Ed. 903 (1894). Such delivery would also satisfy the terms of the bill of lading issued by the carrier which provided that the responsibility of the carrier "shall altogether cease when the goods have been discharged and possession is received or taken by Customs or other authorities...." See Allstate Insurance Co., supra; Tan Hi, supra.
 
 
 7
 However, conflict exists between this custom of the port and the Port Regulations adopted by NPA, which provide in Section IV-84(2) that:
 
 
 8
 "Cargo shall only be regarded as landed when placed and safely deposited in Transit Warehouse or at a place designated by the Port Manager, and until then delivery of the cargo shall not be considered to have been made to the Authority." (Emphasis supplied.)
 
 
 9
 The purpose of this regulation is to immunize the NPA from liability for losses occurring between the stringpiece and transit warehouse.
 
 
 10
 Both custom and regulations of a foreign port are looked to in determining proper delivery. We have not found a case in which a conflict exists between equally applicable standards as to what constitutes proper delivery. In our opinion the risk of loss under these circumstances, where the carrier has relinquished control of the cargo, should be borne by the consignee. The consignee or its agent at the port has a presence far superior to the carrier's to control the cargo. It is in a much better position to protect against any loss after delivery to the stringpiece. The court below, 532 F.Supp. 77, properly limited recovery to $5,197.50.
 
 
 11
 Affirmed.
 
 
 
 *
 Honorable Charles M. Metzner, United States District Judge for the Southern District of New York, sitting by designation