**GOLD MEDAL TRADING CORP., Plaintiff,**

v.

**ATLANTIC OVERSEAS CORPORATION, individually and as agent for Elder Dempster Lines Ltd., and Elder Dempster Lines Ltd., d/b/a North American West Africa Line, Defendants.**

**No. 83 Civ. 2066 (RWS).**

United States District Court, S.D. New York.

Feb. 15, 1984.

Seligson, Rothman & Rothman, New York City, for plaintiff; Aaron Seligson, Jeffrey E. Rothman, New York City, of counsel.

Healy & Baillie, New York City, for defendants; Jack A. Greenbaum, New York City, of counsel.

## OPINION

SWEET, District Judge.

Plaintiff Gold Medal Trading Corp. ("Gold Medal") has moved for summary judgment. The defendants have cross-moved seeking a dismissal of the complaint. The claim of Gold Medal arises out of an alleged misdelivery of three containers to the consignee Mamadou Kolo N Diallo ("Diallo") in Conakry, Republic of Guinea, Africa, contrary to a letter of instruction requiring presentation of the original bills of lading before delivery. Gold Medal's motion will be granted and the defendants' motion denied on the findings of fact and conclusions of law set forth below.

### Facts

On or about March 16, 1982, Gold Medal delivered to the defendants three containers, numbers 236841–8, 213419–3 and ICSU–2846048, containing textiles seconds. Three original bills of lading each numbered 1001NYCK, dated March 16, 1982 were issued to Gold Medal by Atlantic Overseas Corp. ("Atlantic") as agents for Elder Dempster Lines ("Elder Dempster") and North American New African Line ("NAWAL"), bearing the legend in the upper left corner "Non-Negotiable Unless Consigned To Order." In addition to the

three original bills of lading, five not negotiable copies of the bills of lading were also issued to Gold Medal by Atlantic with the legend "Not Negotiable" added to the lower left.

On March 19, 1982, Specific International Freight Forwarders, Inc. ("Specific") freight forwarding agents of Gold Medal sent a letter to NAWAL instructing NAWAL not to release the containers without the presentment of the original bills of lading. The letter was countersigned by Mr. Treibitz of NAWAL on March 24, 1982. The same instruction was forwarded the following day to the Societe Navale Guineene which is characterized by NAWAL, without contradiction, as nominally a shipping agent, a member of the Port Council of Conakry and an entity of the Guinean government, and the only and required agency for the delivery of cargo in Guinea.

The original bills of lading are and always have been in the possession of Gold Medal and were never sent by Gold Medal to its consignee Diallo. NAWAL's investigation produced statements from both the consignee Diallo and the freight manager of the Societe Navale Guineene that the original bill of lading was presented. Neither could produce the bill which is said by Gold Medal's agent to be presently in his possession. A shadow of factual issue thus exists which calls only for a further submission by the parties as set forth below.

The three containers were loaded aboard the defendants' vessel, the SEKI ROKAKO, on or about March 16, 1982, destined for Conakry, Republic of Guinea. Sometime thereafter, in late March or early April, 1982, the SEKI ROKAKO reached Conakry, Guinea, and discharged the plaintiff's three containers to the custody of the Societe Navale Guineene which thereafter released them to the consignee Mamadou Diallo.

The invoices covering the containers state the price of the goods contained to be $112,689.20. The consignee has paid some $20,000 of the amounts due Gold Medal's affiliate, A. & S Baumtex. The money was applied to the consignee's obligation. Thereafter, following the initiation of this action, a representative of Gold Medal agreed with the consignee to settle the remaining balance of the unpaid claim for $50,000, and Gold Medal has received another $5,000 to $6,000 toward that end.

■ Gold Medal contends that the original bills were intended to be negotiable, even though they were not consigned to order, because the copies were conspicuously stamped "Not Negotiable." The Pomerene Bills of Lading Act, 49 U.S.C. §§ 81–124, requires that any non-negotiable, straight bill of lading "have placed plainly upon its face by the carrier using it 'nonnegotiable' or 'not negotiable.'" 49 U.S.C. § 86. The quoted notation "Non-Negotiable Unless Consigned to Order" printed in the upper left hand corner and on the back of the original bills of lading is sufficient to satisfy this requirement, therefore I conclude that these bills were nonnegotiable, "straight" bills of lading.

A carrier is justified in delivering goods to the consignee named in a straight bill of lading, subject to the provisions of 49 U.S.C. §§ 90–92. 49 U.S.C. § 89(b). However, Section 90(a) provides:

Where a carrier delivers goods to one who is not lawfully entitled to the possession of them, the carrier shall be liable to anyone having a right of property or possession in the goods if he delivered the goods otherwise than as authorized by subdivisions (b) and (c) of section 89 of this title; and, though he delivered the goods as authorized by either of said subdivisions, he shall be so liable if prior to such delivery he—

(a) Had been requested, by or on behalf of a person having a right of property or possession in the goods, not to make such delivery.

■ The letter of Gold Medal's agent to NAWAL constituted a direction to release the containers only upon presentation of the original bill of lading, a direction which was conveyed to NAWAL's shipping agent, Societe Navale Guineene, a direction which

the latter disregarded. Thus, although NAWAL's agent delivered the goods to the consignee, as authorized by 49 U.S.C. § 89(b), it did so in disregard of a request by Gold Medal not to make such a delivery. NAWAL is therefore liable for Gold Medal's damages suffered as a result of the misdelivery. 49 U.S.C. § 90(a). *See Wabco Trade Co. v. S.S. Inger Skou,* 482 F.Supp. 444, 448 (S.D.N.Y.1979).

Gold Medal's failure to retain a security interest in the goods by virtue of the issuance of nonnegotiable bills of lading, Uniform Commercial Code, § 2–505(1)(b), does not alter the agreement between Gold Medal, the shipper, and NAWAL, the carrier. At the time of the instruction, Gold Medal had a right of property in the goods sufficient to call 49 U.S.C. § 90(a) into play.

Defendants contend, however, that the Carriage of Goods by Sea Act ("COGSA"), 46 U.S.C. §§ 1300–15, limits their liability to $500 per container. 46 U.S.C. § 1304(5) provides in pertinent part:

> Neither the carrier nor the ship shall in any event be or become liable for any loss or damage to or in connection with the transportation of goods in an amount exceeding $500 per package lawful money of the United States, or in case of goods not shipped in packages, per customary freight unit, or the equivalent of that sum in other currency, unless the nature and value of such goods have been declared by the shipper before shipment and inserted in the bill of lading. This declaration, if embodied in the bill of lading, shall be prima facie evidence, but shall not be conclusive on the carrier.

■ The COGSA limitation applies to losses during the tackle to tackle period of ocean carriage. COGSA applies "from the time when the goods are loaded on to the time when they are discharged from the ship." 46 U.S.C. § 1301(e). The liability of the carrier prior to loading and after discharge is subject to the Harter Act, 46 U.S.C. §§ 190–96. 46 U.S.C. § 1311; *Leather's Best, Inc. v. SS Mormaclynx,* 451 F.2d 800, 816 (2d Cir.1971); *Eutectic Corp. v. M/V Gudmundra,* 367 F.Supp. 681 (S.D.N.Y.1973); *but see North River*

*Ins. Co. v. Fed. Sea/Fed Pac Line,* 647 F.2d 985 (9th Cir.1981) (COGSA may be incorporated by contract to govern situations normally outside its scope), *cert. denied,* 455 U.S. 948, 102 S.Ct. 1448, 71 L.Ed.2d 662 (1982). In this case, the loss occurred after discharge, therefore the Harter Act applies.

Clause 16 of the bills of lading provided:

> **16.** In case of any loss or damage to or in connection with goods exceeding in value the equivalent of $500 lawful money of the United States per package, or in the case of goods not shipped in packages per customary freight unit the value of the goods shall be deemed to be $500 per package or per unit. The Carrier's liability, if any, shall be determined on the basis of a value of $500 per package or per customary freight unit or pro rata in case of partial loss, unless the nature of the goods and a valuation higher than $500 per package or unit shall have been stated by the shipper on the face of this bill of lading in the space provided. In such case, if the shipper's valuation exceeds $500 per package or customary freight unit, an extra charge for freight may be made on an ad valorem basis in accordance with the Carrier's Freight Tariff Rules and Regulations filed with the Federal Maritime Commission, Washington, D.C. In such cases, if the actual value of the goods per package or per customary freight unit shall exceed such declared value, the value shall, nevertheless, be deemed to be declared value and the Carrier's liability, if any, shall not exceed the declared value and any partial loss or damage shall be adjusted pro rata on the basis of such declared value.

> Whenever any loss or damage occurs to the cargo before loading or after discharge or to cargo stowed on deck or to other cargo to which the U.S. Carriage of Goods by Sea Act does not apply, then all such goods shipped in containers, vans or trailers or as a physical unit or piece of cargo not shipped in a package nor shipped in bulk shall be deemed a package irrespective of the weight and measurement units employed in calculating

freight. Containers, vans or trailers shall at all times be deemed to be packages whenever the number of packages inside is not clearly specified by the Shipper on the face of this bill of lading whenever loaded by the shipper, or whenever packaging of cargo inside would not be suitable for breakbulk cargo.

The Harter Act provides that a clause in a bill of lading relieving a carrier from liability for loss or damage due to negligence is null and void. 46 U.S.C. § 190. It also prohibits any agreement that weakens the obligation of a carrier to exercise due diligence. 46 U.S.C. § 191. Nevertheless, a package limitation, such as the one at issue here, limiting liability to $500 per container, does not violate the Harter Act if the shipper was given the opportunity to declare the actual cargo value and to pay an ad valorem freight. *See The Ansaldo San Giorgio I v. Rheinstrom Bros. Co.*, 294 U.S. 494, 496–97, 55 S.Ct. 483, 484–85, 79 L.Ed. 1016 (1935); *Leather's Best, Inc. v. S.S. Mormaclynx, supra*, at 816.

In sole support of its assertion that the Harter Act does not permit a carrier to incorporate a limitation on liability in its bill of lading and, in fact, voids such a limitation Gold Medal cites *Miles Metal Corp. v. M.S. Havjo*, 494 F.2d 563 (2d Cir. 1974). In that case, the Second Circuit reversed the judgment of the district court, limiting the plaintiff's liability to $500 under COGSA, and directed that judgment be entered for the full value of the cargo. The court held that an on-board bill of lading does not constitute prima facie evidence that cargo has been placed aboard a vessel. Accordingly, the COGSA limitation did not apply to the loss. The court did not mention a limitation of liability provision in the bill of lading, and it gave no indication that such a limitation, if it had existed, would not have been upheld under the Harter Act.

Accordingly, I find the $500 per package limitation valid under the Harter Act. Of course, if the limitation were invalid under COGSA while the goods were at sea, it would not be allowed to "spring to life once the goods reached land." *Leather's Best, Inc. v. S.S. Mormaclynx, supra*, at 816 (quoting *David Crystal, Inc. v. Cunard Steam-Ship Co.*, 339 F.2d 295, 299 (2d Cir.1965)). In this case, however, there is no contention that the $500 per package limitation in the bills of lading violated COGSA. Moreover, the bill of lading provision at issue here explicitly covered post-discharge loss.

Despite the motions and cross-motions for summary judgment, and the absence of any claim of a dispute of material fact, as noted there remains the vestige of a question as to whether the original bills were in fact presented by the consignee in Conakry. On the basis of this record, in view of the direct evidence submitted by Gold Medal and the hearsay evidence of the defendants, the finding that the consignee failed to present the original bills of lading is firm. However, if the parties should wish to present additional evidence on this issue, leave is hereby granted to do so by way of an application within twenty (20) days outlining such evidence and the means by which it would be presented. Absent such additional evidence, judgment will be entered directing payment by defendants of $1,500 and costs.

**IT IS SO ORDERED.**