**VELCO ENTERPRISES, LTD., Plaintiff,**

v.

**S.S. ZIM KINGSTON, its engines, and boilers, and Zim Israel Navigation Co., Ltd., Zim Container Service, and Zim–American Israeli Shipping Co., Inc., Defendants.**

No. 91 Civ. 8563 (JES).

United States District Court, S.D. New York.

July 20, 1994.

Kroll & Tract, New York City (James W. Carbin, of counsel), for plaintiff.

DeOrchis & Partners, New York City (John A. Orzel, of counsel), for defendants.

## OPINION AND ORDER

SPRIZZO, District Judge.

The above-captioned admiralty action comes before the Court for judgment without a trial. The parties submitted to the Court one stipulated exhibit ("Stip.Ex. A"); plaintiff's exhibits A through E ("Pl.Exs."), which include the depositions of defendants' witnesses, Guillermo Amiama, a Vice President of Operations and Traffic for B & R Shipping Co., the defendants' ship agent and stevedore in Santo Domingo, Dominican Republic, and George Montt Butler, Esq., defendants' expert on Dominican law; defendants' exhibits A through F ("Def.Exs."); and the affidavits of defendants' two witnesses. For the reasons that follow, judgment shall be entered for the plaintiff.

## BACKGROUND

Plaintiff Velco Enterprises, Ltd., ("Velco"), is the owner and shipper of a certain shipment of 800 bags of synthetic resin (polyethylene) that is valued at $21,164.00 (the "shipment"). *See* Pl.Exs. A, B. Defendants are Zim Israel Navigation Co., Ltd., Zim American Israeli Shipping Co., Inc., and Zim Container Service, a foreign corporation and two United States corporations, respectively, engaged in business as common carriers of merchandise by water for hire, and the M/V ZIM KINGSTON, the ship that carried the plaintiff's shipment (collectively, "Zim"). *See* Joint Pre-Trial Order dated February 8, 1993, Undisputed Facts ¶¶ 3–5; *see also* Verified Complaint ¶ 4.

Velco tendered the shipment to Zim on or about April 11, 1990, at the Port of Houston, Texas, for carriage to Santo Domingo, Dominican Republic, aboard the M/V ZIM KINGSTON. *See* Def.Ex. C, D. Zim held the container at the request of Velco's freight forwarder, P.J. Caputo Shipping Co., Inc., to await the next voyage of the M/V ZIM KINGSTON. Def.Ex. C. Pursuant to Velco's instructions, however, the container was not shipped on that voyage, but held on the Houston pier. Def.Ex. D. Due to the delay in shipment, Zim issued an invoice to Velco for $327.15, which included a container storage charge for the period April 11, 1990 to May 9, 1990. Def.Ex. F. Velco requested further delays in the shipment of the container until June 12, 1990, when it directed Zim by telefax to ship the container using the original non-negotiable bill of lading. Def. Ex. E.

The defendant M/V ZIM KINGSTON carried the cargo on the M/V ZIM KINGSTON pursuant to its non-negotiable, straight bill of lading, No. ZIMUIAH2833, dated March 13, 1990. *See* Pl.Ex. C; Stip.Ex. A. The bill of lading lists Velco as the shipper of the cargo, and "CHASE MANHATTAN BANK, AV. J.F. KENNEDY, STO. DOMINGO, DOM. REPUB." as the consignee. *See id.* "TECHNIPLAST, S.A. ANIBAL DE ESPINOSA, SANTO DOMINGO, REP. DOMINCANA" is listed on the bill of lading as the notify party, and was the intended receiver to whom Velco sold the cargo. *See id.*

The M/V ZIM KINGSTON, Voyage 60, arrived in the Dominican Republic at the port of Rio Haina on June 27, 1990, Amiama Dep. 43; Butler Dep. 50, whereupon the shipment was discharged from the M/V ZIM KINGSTON into the custody of the Dominican Port Authority pursuant to port regulations. Amiama Aff. ¶ 3, 4. On July 16, 1990, the ship's port agent authorized the release of the cargo by signing a "tarja," a receipt entitled "IMPORTATION: RECEPTION—DELIVERY" issued by the Dominican Port Authority to the ship's port agent to verify receipt of the manifested cargo. Def.Ex. B. According to port custom, the tarja "is issued not [sic] until the consignee comes to take delivery," Amiama Dep. 45, because the cargo should not "be delivered from the termi-

nal without a tarja having been completed." Amiama Dep. 55.

Despite the issuance of the tarja, Velco was not paid for the cargo,[1] which Velco's invoice indicates was worth $21,164.00. *See* Pl.Ex.B. The bill of lading was subsequently returned to Velco by the holder, Chase Manhattan Bank. Velco then commenced this action on December 20, 1991. *See* Complaint. Defendant filed an Answer on February 7, 1992. Following several Pre–Trial Conferences and the completion of discovery, and upon consent of all parties, this Court tried this case on the facts and evidence submitted by the parties.

## DISCUSSION

Liability of the carrier for the period prior to loading and after discharge is governed by the Harter Act, 46 U.S.C. app. §§ 190–196; *Leather's Best, Inc. v. S.S. Mormaclynx,* 451 F.2d 800, 816 (2d Cir.1971); *Gold Medal Trading Corp. v. Atlantic Overseas Corp.,* 580 F.Supp. 610, 613 (S.D.N.Y.1984), which imposes a duty on a carrier to make proper delivery of the cargo and prohibits and nullifies attempts by carriers to "be relieved from liability for loss or damage arising from negligence, fault, or failure in ... proper delivery...." 46 U.S.C. app. § 190.

■ Moreover, the Pomerene Bills of Lading Act, 49 U.S.C. app. § 81 *et seq.,* provides that a carrier operating under a straight bill of lading (such as that in this case) is justified in delivering the goods to "the consignee in a straight bill for the goods." 49 U.S.C. app. § 89. The Pomerene Act also provides

that "[w]here a carrier delivers goods to one who is not lawfully entitled to the possession of them, the carrier shall be liable to anyone having a right of property or possession in the goods if he delivered the goods otherwise than as authorized by ... section 89 of this title ...," *i.e.,* to a person other than the consignee in possession of bill of lading. 49 U.S.C. app. § 90. Furthermore, delivery to a person not entitled to the goods without production of the bill of lading is *prima facie* evidence of a conversion of the goods and a breach of contract. *See Allied Chemical Int'l Corp. v. Companhia de Navegacao Lloyd Brasileiro,* 775 F.2d 476, 481 (2d Cir. 1985).

■ Velco contends that Zim's own shipping agent's testimony establishes that Zim or its agents released the goods without requiring the person receiving the goods to produce the original bill of lading, and that therefore plaintiff is entitled to judgment as a matter of law for misdelivery and conversion. For the reasons that follow, this Court agrees.

■ Zim does not dispute that it was obliged by the applicable statutory law to make proper delivery of Velco's cargo. *See* Defendant's Post–Trial Memorandum of Law at 14. However, Zim argues that by discharging the cargo into the custody of the Port Authority as required by Dominican Republic Law No. 70 of December 17, 1970, Official Gazette No. 9210 of December 18, 1970, ("Dominican Law No. 70"), *see* Def.Ex. A,[2] it satisfied its delivery obligation. *See also Farrell Lines Inc. v. Highlands Ins. Co.,*

---

1. Zim's port agent testified at his deposition that the receiving party "took delivery" from the pier. Amiama Dep. 52–53. The parties submitted no other evidence on the issue of who received the shipment.

2. Article IV of the Dominican Law No. 70 provides, in pertinent part, that the functions of the Port Authority are:

. . . .

e.) To direct and carry out in the areas of the commercial ports everything relating to the entrance, departure, mooring and stay of merchant vessels and with respect to loading, discharge and depositing or storage of cargo.

. . . .

g.) The reception, movement within its areas, and locating in its warehouses, deposits, yards

and other sites intended for this purpose, of the goods and other property which are loaded or discharged.

h.) The delivery of the goods to the vessels, in case of loading, or to its consignees or representatives in case of discharge, in strict compliance with the general provisions of the customs authorities.

i.) The handling of the import and export cargo, the receipt, movement, stowing, preservation, conservation and delivery thereof for export or domestic consumption subject, with respect to the delivery, to the statutory mandate of Customs.

*See* Def.Ex.A; *see also* Butler Aff. ¶ 3.

696 F.2d 28, 29 (2d Cir.1982) (per curiam). That argument is foreclosed, however, by *Allied,* where a similar argument was rejected by the Second Circuit.

In *Allied,* as here, local custom and usage required that cargo be discharged into the custody of the government-controlled port authority. *See Allied, supra,* 775 F.2d at 479. Nevertheless, the evidence also established that a "carta declaratoria" issued by the defendant's agent authorizing release of the goods was required for the consignee to obtain the goods from the port authority unless the consignee presented the port authority with an original bill of lading. *See id.* at 479–80, 484. The Court held, therefore, that the carrier had "acted at its peril" when it issued the *carta declaratoria* without demanding production of the bill of lading, thus permitting the consignee to take possession of the goods without surrendering the bill of lading. *See id.* at 484.

In this case, the testimony of Zim's own witnesses established that, as in *Allied,* although port regulations required Zim to discharge Velco's shipment into the custody of the Port Authority, Zim retained the power to prevent the Port Authority from delivering the shipment to the person receiving the goods unless that person produced the original bill of lading. Indeed, Zim's expert witness on Dominican law admitted that "when there are certain particular problems with a shipment [the ship's agents] know of, they can request customs and the Dominican Port Authority not to deliver cargo to a consignee." Butler Dep. 23. Moreover, the deposition testimony of Zim's agent Amiama makes it clear that although port regulations required the Port Authority to issue and Zim to countersign the tarja upon delivery of the cargo to the Port Authority under the custom actually in effect at the port that did not usually happen. *See* Amiama Dep. 45; *see also* Butler Dep. 30. In fact, the Port Authority did not issue the tarja and, more importantly, defendant's shipping agent did not countersign the tarja until delivery to the consignee. Amiama testified:

> "In principle, the tarja should be prepared when the vessel is being discharged. However, because the system doesn't work

properly, the tarja is issued not until the consignee comes to take delivery or the verification is issued to the ship agents." Amiama Dep. 45.

■ Here, in conformity with the port custom, although the ship was discharged on June 27, 1990, no tarja documenting the ship's delivery of Velco's shipment to the Port Authority was issued on that date. Indeed, the tarja was issued nineteen days later, on July 16, 1990, *see* Def.Ex. B, when according to Zim's own shipping agent, the consignee or recieving party would have come to the port to take delivery of the shipment. *See* Amiama Dep. 45. By Zim's signing the tarja when the receiving party had not submitted the bill of lading, Zim, like the defendant carrier in *Allied,* breached its delivery obligation by facilitating delivery of the goods without the production of the bill of lading.

Given that circumstance, Zim's contention that this tarja is distinguishable from the carta declaratoria in *Allied* because in *Allied* the carta declaratoria was issued by the defendant shipper, whereas here the tarja is the Port Authority's document, is not persuasive. It is undisputed that unless Zim's agent countersigned the tarja, as he did in this case, *see* Def.Ex. B, the Port Authority would not have permitted any consignee or receiver to take the shipment. *See* Amiama Dep. 55. Moreover, defendant has submitted no proof whatsoever that it would have been compelled by Dominican law to countersign the tarja despite the receiver's failure to produce the original bill of lading.

Nor is the Court persuaded by Zim's argument that this case is distinguishable from *Allied* because its agent's countersignature on the tarja does not operate as an order or authorization from Zim's agent to the Port Authority to release the cargo, but merely documents the transfer of cargo upon discharge from the ship to the Port Authority. If Zim's agent had signed the tarja on June 27, 1990, then Zim's contention might have been more persuasive. However, since Zim did not sign the tarja until over two and a half weeks later, and taking into consideration the actual custom and practice of the port as established by defendants' own wit-

nesses, the tarja served the additional purpose of authorizing the Port Authority to release the cargo. In sum, it appears clear that the Port Authority would not have permitted any consignee or receiving party to take the shipment without that tarja having been signed by the defendant. *See* Amiamo Dep. 55.

### CONCLUSION

For the reasons stated above, the Clerk of the Court is directed to enter judgment for the plaintiff and to close the above-captioned action.

It is **SO ORDERED.**